**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALEXANDER WHITON, individually and onbehalf of all persons similarly situated, as Class/Collective representative,** | ) | **Case No.: 15-cv-1681** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **JAMES JOHN LIAUTAUD, JIMMY JOHN'S, LLC, JIMMY JOHN'S ENTERPRISES, LLC, JJ SEVERSON AFFILIATES FIVE, INC. JJ SEVERSON AFFILIATES, INC., JIMMY JOHN'S FRANCHISE, LLC, TODD SEVERSON, and BROOKE SEVERSON,** | ) | **Jury Trial Demanded on All Counts** |
| **Defendants.** | ) | |

**CLASS ACTION COMPLAINT**

ALEXANDER WHITON ("Plaintiff WHITON"), individually and on behalf of all others similarly situated, upon personal knowledge as to those allegations in which he so possesses and upon information and belief as to all other matters, complains against Defendants, JAMES JOHN LIAUTAUD ("LIAUTAUD"), JIMMY JOHN'S, LLC, JIMMY JOHN'S FRANCHISE, LLC and JIMMY JOHN'S ENNTERPRISES, LLC (hereinafter collectively referred to as "JJF"), JJ SEVERSON AFFILIATES FIVE, INC. and JJ SEVERSON AFFILIATES, INC. (hereinafter referred to collectively as "JJ SEVERSON"), TODD SEVERSON and BROOKE SEVERSON (all above-referenced Defendants shall collectively be referred to as "Defendants") as follows:

## I. NATURE OF THE CASE

1. Plaintiff, on his individual behalf, and on behalf of classes of similarly situated current and former employees of Defendants, brings this action to redress improper payment of wages and other compensation and declaratory relief seeking the invalidity, or in the alternative modification/"blue-penciling," of Defendants' form contract known as the Confidentiality and Non-Competition Agreement, which Defendants require their employees, including Plaintiff, to sign as a condition of employment. A Copy of the Confidentiality and Non-Competition Agreement is attached hereto as Exhibit A.

2. Jimmy John's Gourmet Sandwiches is a fast-food sandwich company with over 2,000 nearly identical, standardized sandwich shops ("JIMMY JOHN'S® Sandwich Shops") located throughout the United States (in 44 States and the District of Columbia). Defendant JJF reported approximately 1.3 billion dollars in revenue in 2013 and Defendant JJF is valued at over two billion dollars. Defendants currently employ over 80,000 people according to the official company website, and have employed hundreds of thousands of people during the relevant time period.

3. Plaintiff was forced to bring this action because, despite record profits and explosive growth, Defendants chose to intentionally disregard the employment rights of the very people that are necessary to achieve their growth and profit—their employees. Defendants refuse to pay their employees a fair and legal wage and, as a condition of their employment, require them to sign an unreasonable and overly broad Confidentiality and Non-Competition Agreement which operates, among other onerous and burdensome ways, to restrict them from working for any type of business that "generates more than 10% of its revenue from sandwiches" within a three-mile radius of any of any of the 2,000 JIMMY JOHN'S® Sandwich Shop

locations nationwide. Effectively, this agreement requires employees to accept unfair wages because if they stop working for Defendants, their options for new employment are subject to outrageously broad restrictions.

4. Plaintiff is sending a message to Defendants that they cannot engage in wage theft that drops their effective rate of pay below minimum wage and denies them overtime pay, and cannot require, as a condition of employment, that their employees enter into a non-negotiable, take-it-or-leave-it contract that contains terms, provisions and language rendering the contract unclear, ambiguous, incomplete and effectively impossible to comply with, yet threatens Plaintiff with two enforcement provisions purportedly subjecting Plaintiff to damages for breach, costs of Defendants' enforcement action and his own costs of defense.

5. Plaintiff alleges that the Confidentiality and Non-Competition Agreement needs interpretation, construction, a determination of invalidity, or in the alternative, this Court should modify the Confidentiality and Non-Competition Agreement per the express grant of such authority to "blue-pencil" in paragraph 8 of the Confidentiality and Non-Competition Agreement, as needed to resolve ambiguities, clarify the legal positions of the parties, construct the agreement, interpret the agreement and conform the agreement in a manner that renders it valid and enforceable.

6. Plaintiff, individually, and in his representative capacities, pursuant to Fed. R. Civ. P. 23(b) and (c) and 29 U.S.C. § 216(b), brings the following claims:

**a.** **First Claim**: Violations of the FLSA brought by Plaintiff, individually and on behalf of the "**Nationwide Collective**" (defined herein), against Defendant JJF and Defendant LIAUTAUD;

**b.** **Second Claim:** Violations of the IMWL, brought by Plaintiff, individually

and on behalf of the "**Illinois Rule 23(c) Class**" (defined herein), against Defendant JJF and Defendant LIAUTAUD;

c. **Third Claim**: Violations of the FLSA, brought by Plaintiff, individually and on behalf of **"The SEVERSON Illinois FLSA Collective**" (defined herein), against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON;

d. **Fourth Claim:** Violations of the of the IMWL, brought by Plaintiff, individually and on behalf of **"The SEVERSON Illinois Wage Class**," (defined herein), against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON;

e. **Fifth Claim**: For Declaratory and Injunctive Relief against LIAUTAUD and JJF, brought by Plaintiff, individually and on behalf of a Rule 23(b)(2) Class ("**Declaratory Class**") of similarly situated current employees who executed the Confidentiality and Non-Competition Agreement at any time, and former employees that executed the Confidentiality and Non-Competition Agreement during the two years preceding the filing of this lawsuit against all Defendants; and

f. **Sixth Claim**: For Declaratory and Injunctive Relief against JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, individually and as representatives of a class of similarly situated Franchisee Defendants, brought by Plaintiff, individually and on behalf of a Rule 23(b)(2) Class ("**Declaratory Class**") of similarly situated current employees who executed the Confidentiality and Non-Competition

Agreement at any time, and former employees that executed the Confidentiality and Non-Competition Agreement during the two years preceding the filing of this lawsuit against all Defendants.

7. All claims brought herein are pled in the alternative to the extent necessitated for proper construction under the law.

## II. INTRODUCTION

8. Defendant JJF was founded in 1983, by then-19-year-old Defendant LIAUTAUD, but his business systems and sandwich savvy were not spectacular enough to grow his company beyond a small number of initial stores. He needed more money to open more stores.

9. In 1993, 10 years after founding Defendant JJF, Defendant LIAUTAUD decided to solve his financing issues by exercising his control over Defendant JJF and using it to construct an illusory franchise business, when in fact his JIMMY JOHN'S® Sandwich Shop franchise system was nothing more than a creatively packaged system designed to: (1) finance the development of Defendant LIAUTAUD's JIMMY JOHN'S® Sandwich Shop empire by convincing Operator/Franchisees to finance JIMMY JOHN'S® Sandwich Shops and then perform all the typical duties that a general manager would have performed for Defendant LIAUTAUD and Defendant JJF; and (2) insulate Defendant LIAUTAUD and Defendant JJF from legal liability by claiming "Franchisor" immunity, while still maintaining substantial and nearly complete control and conducting business as if all 2,000 stores were their wholly-owned operations.

10. By obtaining financing and managerial labor, through a so-called franchise opportunity, Defendant LIAUTAUD enjoyed substantial growth and was able to open his 100th store by 2001. But, 100 stores was far from Defendant LIAUTAUD's dream sandwich empire,

so he had to keep working diligently to create a product that customers really wanted, as well as get more creative, work harder to perfect his recipes and sandwiches, improve his systems and operating processes and exercise even tighter control over uniformity and system conformity at his JIMMY JOHN'S® Sandwich Shops.

11. By micro-managing every aspect of his JIMMY JOHN'S® Sandwich Shop empire, Defendant LIAUTAUD began to experience expansive growth, adding approximately an additional 2,000 JIMMY JOHN'S® Sandwich Shops by 2014.

12. Defendant LIAUTAUD has created, implemented, and continues to direct and "nurture" a tightly controlled, carefully monitored and audited, uniform system applicable to every aspect of the operations of each and every JIMMY JOHN'S® Sandwich Shop. Operator/Franchisees have no discretion to modify any aspect of the operations and systems, but rather must obtain the explicit approval if any deviation is made.

13. In Defendant LIAUTAUD's own words he affirms, "***I am the franchisor.***"

14. Individual franchisees follow the explicit, precise, and detailed instructions and mandates JJF and LIAUTAUD give them, including with respect to the duties and compensation of Assistant Store Managers ("ASMs").

15. JJF and LIAUTAUD owned shops and franchise shops follow the same policies and practices with respect to ASMs' duties and compensation.

16. JJF and LIAUTAUD uniformly exercise control over all aspects of the design, layout, systems, compensation, managerial and operational functions at all company-owned and franchised shops, including creating, mandating, and causing to be implemented the policies and practices that caused the violations alleged herein.

17. JJF and LIAUTAUD create, mandate, and cause to be implemented uniform

policies at its company-owned and franchised shops, including, but not limited to, policies regarding management, human resources, job titles and duties, minimum weekly hour requirements for ASMs and other employees, staffing requirements, compensation, wage and hour compliance, employee practices, and terms and conditions of employment. These policies do not vary from shop to shop, whether company-owned or franchise shops.

18. JJF and LIAUTAUD have the absolute right to terminate relationships with their franchisees and therefore to terminate the employees that work for that franchise.

19. JJF's and LIAUTAUD's franchisees cannot shift their JJF operations to another fast food chain.

20. Employees at franchise shops are integral to the services and products that JJF and LIAUTAUD provide to the public.

21. JJF and LIAUTAUD contractually control all JIMMY JOHN'S® Sandwich Shops, including franchise shops.

22. JJF and LIAUTAUD set the criteria for who they will consider to operate franchises.

23. JJF and LIAUTAUD set and control the job duties and training, and otherwise control the operations of the franchise shops, through the franchise agreement, the mandatory Confidential Operations Manual and by participation in the daily management and operations of all shops, including franchise shops.

24. JJF's and LIAUTAUD's standard and uniform Franchise Agreement affirmatively states:

"*During your operation of the Restaurant, **we will***:

> 6. *Inspect the Restaurant, observe and **participate in its normal operation**, and interview and interact with your employees and customers to help you*

> *comply with the Franchise Agreement and all System Standards.* (Franchise Agreement – Section 11.A)."

25. JJF's and LIAUTAUD's website includes the franchise shops.

## III. JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, 29 U.S.C. § 216(b). Plaintiff does not bring any claims pursuant to or under a collective bargaining agreement.

27. The Court is authorized to issue a Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

28. Upon information and belief, the amount in controversy in this matter exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs.

29. Upon information and belief, at least one member of the Rule 23 Class and/or collective is a citizen of a state different than that of Defendants.

30. Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391. Defendants do business in the Northern District of Illinois, Eastern Division, and Plaintiff is a resident of the Northern District of Illinois, Eastern Division. Defendants are subject to personal jurisdiction in the State of Illinois for the purpose of this lawsuit as all Defendants are domiciled in, and residents of, the State of Illinois.

## IV. PARTIES

### A. Plaintiff:

31. Plaintiff WHITON is an Illinois resident currently residing in Park City, Illinois. Plaintiff WHITON worked at five JIMMY JOHN'S® Sandwich Shops, located in Waukegan,

Illinois; Vernon Hills, Illinois; Gurnee, Illinois; Zion, Illinois; and Libertyville, Illinois. Plaintiff WHITON was an ASM employee, under the FLSA and applicable Illinois law, of Defendants JJF, LIAUTAUD, JJ SEVERSON, TODD SEVERSON, and BROOKE SEVERSON. A written consent form for Plaintiff WHITON, is attached to this Complaint as Exhibit B.

**B. Defendants:**

32. Defendants are/were the employer and/or joint employer and/or single employer of Plaintiff and thousands of other current and former ASMs that Defendants have misclassified as "exempt" under the FLSA and IMWL in order to work them long hours and deny them minimum wages and overtime pay. Defendants also caused Plaintiff, and members of the Rule 23(b)(2) Class to execute the Confidentiality and Non-Competition Agreement, in substantially the same form attached as Exhibit A, as a condition of employment.

**i. Defendant JJF and Defendant LIAUTAUD**

33. Defendant JIMMY JOHN'S FRANCHISE, LLC, is a Delaware limited liability company with its principal place of business in Illinois, at the following address: 2212 Fox Drive, Champaign, Illinois 61820. JIMMY JOHN'S FRANCHISE, LLC is authorized to do business in the State of Illinois, and is currently doing business in the State of Illinois.

34. Defendant JIMMY JOHN'S FRANCHISE, LLC, is the successor entity to Jimmy John's Franchise, Inc. JIMMY JOHN'S FRANCHISE, LLC, by operation of law, received all rights, title and interest in and to the assets, and assumed any and all obligations and liabilities, of Jimmy John's Franchise, Inc. Jimmy John's Franchise, Inc. was the franchisor of the JIMMY JOHN'S® Sandwich Shop system from 1993 until December 2006. Other than the franchisor entity's change from an Illinois corporation to a Delaware limited liability company, the merger had no impact on the JIMMY JOHN'S® Sandwich Shop franchise system.

35. Defendant JIMMY JOHN'S ENTERPRISES, LLC, is a Delaware limited liability company that was created with the sole purpose of merging with Jimmy John's Enterprise, Inc., an Illinois corporation formed in 1983, to change Jimmy John's, Inc. from an Illinois corporation to a Delaware limited liability company. Defendant JIMMY JOHN'S ENTERPRISES, LLC, was the surviving entity after the merger which became effective in December of 2006. As a result of the merger, Defendant JIMMY JOHN'S ENTERPRISES, LLC, received all the rights, title and interest in and to the assets, and assumed any and all obligations and liabilities of Jimmy John's Enterprises, Inc. Other than the merger's impact on the change from an Illinois corporation to a Delaware limited liability company, the merger otherwise had no impact on the JIMMY JOHN'S® Sandwich Shop franchise system. Defendant JIMMY JOHN'S ENTERPRISES, LLC, is an affiliate of Defendant JIMMY JOHN'S FRANCHISE, LLC, shares the same principal place of business, shares the same members, corporate governance and for all intents and purposes are one-in-the-same, act in concert or as alter-ego of each other, or as a single integrated entity and is herein collectively referred to as Defendant JJF.

36. Defendant JIMMY JOHN'S, LLC is the parent corporation of JIMMY JOHN'S FRANCHISE, LLC, shares the same members, business operations and principal business address (Champaign, Illinois) as JIMMY JOHN'S FRANCHISE, LLC, and is one-in-the same, the alter–ego of each other, or a single integrated entity and is herein collectively referred to as Defendant JJF.

37. Defendant JJF is an employer, under the FLSA and state wage laws, of every employee working at any JIMMY JOHN'S® Sandwich Shop, including but not limited to Plaintiff.

38. Defendants JJF and LIAUTAUD employ an Illinois Choice of Law provision in

most contracts, including, but not limited to the standard, uniform Franchise Agreement, which it uses to maintain and exercise the ultimate control over and operation of all Jimmy John's Shops and employees as alleged herein. As such, Illinois Law applies to all ASMs and employees nationwide.

39. As of the date of filing this Complaint, Defendant JJF's 2013 revenue was approximately 1.3 billion dollars and Defendant JJF is estimated to be valued at well over two billion dollars.

40. Defendant JJF and Defendant LIAUTAUD are both in the fast food sandwich industry with their principal business being the sales of gourmet deli sandwiches, fresh baked breads, and other food and beverage products and services, using the "JIMMY JOHN'S®" name, both online and at their over 2,000 nearly identical, standard and uniform JIMMY JOHN'S® Sandwich Shops located in at least 44 states and the District of Columbia (JIMMY JOHN'S® Business System").

41. Defendant LIAUTAUD is an Illinois resident and the current CEO of Defendant JJF. Defendant LIAUTAUD is the self-proclaimed, hard-working, entrepreneur mastermind who conceived and founded the JIMMY JOHN'S® Business Systems, the JIMMY JOHN'S® secret recipes, trademarked property, products, services, systems and method of operating the JIMMY JOHN'S® Sandwich Shops. Defendant LIAUTAUD continues to micro-manage every aspect of the JIMMY JOHN'S® Business System, including its further development and the modification and perfection of the systems, procedures and general operations, as the number of JIMMY JOHN'S® Sandwich Shops is experiencing explosive growth.

42. Defendant LIAUTAUD is indispensable to the ongoing viability of the JIMMY JOHN'S® Business System, the operations of Defendant JJF and the success of each JIMMY

JOHN'S® Sandwich Shop.

43. Defendant LIAUTAUD continues to consistently exercise direct control, make key decisions, and implement valuable operational changes and strategies in the JIMMY JOHN'S® Business System and at the JIMMY JOHN'S® Sandwich Shops.

44. On October 15, 2012, in an interview with Neil Cavuto, host of "Your World" on Fox News, Defendant LIAUTUAD held himself out to the public as employing over 60,000 people. http://www.foxnews.com/on-air/your-world-cavuto/2012/10/16/jimmy-johns-founder-business-owners-unsure-future. He further said when asked whether The Affordable Care Act would cause Jimmy John's to reduce employee hours, he said: "*We're not doing it now, but we have to bring them down to 28 hours. Yes, we have to do that. There's no other way we can survive it, because we think it will cost us 50 cents a sandwich. That's just the actual cost*." That interview demonstrates his control over the employment of employees at all JIMMY JOHN'S® Sandwich Shops nationwide.

45. In another public interview, Defendant LIAUTAUD once against affirmed that he was "in charge" and very involved with the operations by stating that public perception of him was negative because, "***<u>I am the franchisor</u>*** *so there must be something wrong with me because I am in charge of this large organization*" and when asked about ensuring quality at 1,000 restaurants he further explained that, "*I think the reason why we have a thousand restaurants is because that's what we do. And I don't want to be the biggest I want to be the best at what I do. And I won't sacrifice anything. I won't sacrifice quality. So the reason that we do that is why we have the restaurants that we have. So, we grow slow and steady. Well now we open a store a day. We'll grow slow and steady. We just focus on making it right.*" http://www.youtube.com/watch?v=pk5gLAWtIPc.

46. Defendant JJF and Defendant LIAUTAUD actuate their proprietary JIMMY JOHN'S® Business System by directly opening JIMMY JOHN'S® Sandwich Shops or through entering into an agreement it refers to as a Franchise Agreement with individuals willing to finance, operate, manage and follow explicit, precise and detailed instructions from Defendants JJF ("Operators/Franchisees") and LIAUTAUD, at JIMMY JOHN'S® Sandwich Shops.

47. Defendant JJF and Defendant LIAUTAUD each exercises control over all aspects of the design, layout, systems and managerial and operational functions at all of their JIMMY JOHN'S® Sandwich Shops, as more fully set forth herein, including creating, mandating and implementing the policies and practices that created the systematic wage theft alleged herein and caused at JIMMY JOHN'S® Sandwich Shop employees nationwide, as a condition of their employment, to execute the Confidentiality and Non-Competition Agreement that are wholly unnecessary, oppressive, overly broad, unreasonable, against public policy, void and unenforceable.

48. Defendant LIAUTAUD is the mastermind behind the mandated use of the Confidentiality and Non-Competition Agreement, as he has been using them himself for years. In fact, he even sued his own cousin, because he opened his own sandwich shop, to enforce one of his overly broad non-competition agreements in federal District Court in Wisconsin. After losing in that case, and being educated on the importance of limited scope of such agreement by the Seventh Circuit Court of Appeals, *Liautaud v. Liautaud*, 221 F.3d 981 (7th Cir. 2000), Defendant LIAUTAUD knew or should have known that the Confidentiality and Non-Competition Agreement at issue in this case is void, against public policy and unenforceable. Although it is different in terms, it is nonetheless governed by the same legal principles. Nevertheless, Defendant LIAUTAUD did not proceed responsibly and take action to make sure

any such agreements were compliant with applicable law; rather, he proceeded with reckless disregard for the legality of the agreement, requiring its use by over 80,000 employees nationwide.

49. Defendant JJF and Defendant LIAUTAUD create and cause to be implemented all policies and practices (operation, financial and otherwise), including but not limited to management policies, human resources policies, job titles/positions and duties, staffing requirements, compensation policies, wage and hour policies, employee practices policies, terms and conditions of employment at a JIMMY JOHN'S® Sandwich Shop, job duties and responsibilities, and uniformly apply all policies, procedures and systems to management and operation of every JIMMY JOHN'S® Sandwich Shop. The policies and practices promulgated, disseminated and mandated by Defendant JJF and Defendant LIAUTAUD have caused the misclassification of ASMs and the denial of minimum wages, wages, overtime wages and otherwise just and due compensation.

**iii. Defendants TODD SEVERSON, BROOKE SEVERSON AND JJ SEVERSON**

50. Defendants TODD SEVERSON and BROOKE SEVERSON are Illinois residents that each list their address with the Illinois Secretary of State to be in Grayslake, Illinois. Each is an Operator/Franchisee, each entered into Defendant JJF's standard Franchise Agreement and related Agreements, has an ownership interest in, controls, operates or manages the day-to-day operations of at least 12 JIMMY JOHN'S® Sandwich Shops located throughout Illinois, including but not limited to the following locations identified in the 2014 FDD ("SEVERSON JIMMY JOHN'S® Sandwich Shops"):

a. JJ Severson Affiliates, Inc.: 1267 E. Dundee Rd., Buffalo Grove, Illinois, 60089;

b. JJFA7, Inc.: 908 Northwest HWY, Fox River Grove, Illinois 60021;

c. JJ Severson Affiliates, Inc.: 5250 Grand Avenue, Gurnee, Illinois, 60031;

d. JJFA7, Inc.: 20771 N Rand Road, Kildeer, Illinois, 60047;

e. JJ Severson Affiliates, Inc.: 1746 N. Milwaukee Avenue, Libertyville, Illinois, 60048;

f. JJNISK, Inc. 9641 N. Milwaukee Avenue, Niles, Illinois 60714;

g. JJFA7, Inc.: 2047 Milwaukee Avenue, Riverwoods, Illinois, 60015;

h. JJ Severson Affiliates, Inc.: 1924 N. IL Route 83, Round Lake, Illinois 60073;

i. JJNISK, Inc.: 9402 Skokie Blvd., Skokie, Illinois, 60077;

j. JJ Severson Affiliates, Inc.: 325 N. Milwaukee Avenue, Vernon Hills, Illinois 60061;

k. JJ Severson Affiliates, Inc.: 3951 Fountain Square Place, Waukegan, Illinois, 60085; and

l. JJFA Six, Inc.: 2111 Sheridan Road, Zion, Illinois, 60099.

51. Defendant JJ SEVERSON is a closely-held Illinois Corporation, authorized to do business and doing business within the State of Illinois, with its corporate headquarters located at 34296 N STONEBRIDGE LN GRAYSLAKE IL 60030. Defendant TODD SEVERSON is its Registered Agent and President. Defendant BROOKE SEVERSON is its Secretary. The 2014 FDD associates JJ SEVERSON with six JIMMY JOHN'S® Sandwich Shops in Illinois as set forth in the preceding paragraph.

52. Defendant JJ SEVERSON AFFILIATES FIVE, INC. ("JJ SEVERSON 5") is a closely-held domestic corporation, incorporated in the state of Illinois, authorized to do business in the State of Illinois and shares the same corporate headquarters with Defendant JJ SEVERSON AFFILIATES, INC.: 34296 N STONEBRIDGE LN GRAYSLAKE, IL 60030. It

also shares the same Registered Agent and President (Defendant TODD SEVERSON) and Secretary (Defendant BROOKE SEVERSON) with Defendant JJ SEVERSON AFFILIATES, INC. JJ SEVERSON 5 does not appear in the 2014 FDD, however may be associated with the Libertyville JIMMY JOHN'S® Sandwich Shop where Plaintiff was employed. Since the 2014 FDD lists JJ SEVERSON AFFILIATES, INC. as the Owner/Franchisee of the Libertyville JIMMY JOHN'S® Sandwich Shop (and both corporations have the same corporate address, Registered Agent and officers), JJ SEVERSON 5 is essentially the same entity, or alter-ego of JJ SEVERSON AFFILIATES, INC., and they will therefore be collectively referred to herein as "JJ SEVERSON."

53. In addition to Defendant JJ SEVERSON 5, the Illinois Secretary of State lists the following similarly named three entities: JJ Severson Affiliates Two, Inc.; JJ Severson Affiliates Three, Inc.; and JJ Severson Affiliates Four, Inc. Each of those entities also shares the same Registered Agent and President (Defendant TODD SEVERSON) and Secretary (Defendant BROOKE SEVERSON) and corporate headquarters at: 34296 N STONEBRIDGE LN GRAYSLAKE, IL 60030. None of these three entities are associated with any JIMMY JOHN'S® Sandwich Shops in the FDD.

54. Although multiple entities are being used by Defendants TODD SEVERSON and BROOKE SEVERSON in the operation of at least 12 JIMMY JOHN'S® Sandwich Shops throughout Illinois, Defendants TODD SEVERSON and BROOKE SEVERSON control, operate, manage the day-to-day operations and maintain an ownership interest in each of the SEVERSON JIMMY JOHN'S® Sandwich Shops, or act as a joint employer with or agent of Defendant JJF and Defendant LIAUTAUD in performing management and operational duties ("SEVERSON JIMMY JOHN'S® Sandwich Shops").

55. Defendant TODD SEVERSON and Defendant BROOKE SEVERSON are only Operator/Franchisees, and only engage in management and operational duties, at the SEVERSON JIMMY JOHN'S® Sandwich Shops, which are all located within the State of Illinois.

56. Defendant TODD SEVERSON in his individual capacity, is an employer under the FLSA and Illinois state law, of Plaintiff and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant TODD SEVERSON has directly and proximately caused Plaintiff, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay, including, but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

57. Defendant BROOKE SEVERSON in her individual capacity, is an employer under the FLSA and Illinois state law, of Plaintiff and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant BROOKE SEVERSON has directly and proximately caused Plaintiff, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay, including, but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

58. Defendant JJ SEVERSON is an employer, under the FLSA and Illinois state law, of Plaintiff and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant JJ SEVERSON has directly and proximately caused Plaintiff, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and

pay, including, but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

59. At all relevant times, all Defendants were engaged in commerce within the meaning of 29 U.S.C. § 203(b).

60. At all relevant times all Defendants performed related activities for a common business purpose and therefore together constitute an enterprise as defined by the FLSA. 29 U.S.C. § 203(r)(l).

61. At all relevant times, Defendants TODD SEVERSON, BROOKE SEVERSON, and JJ SEVERSON each acted, directly or indirectly, in the interest of Defendants JJF and LIAUTAUD, in relation to Plaintiff and similarly situated employees, and implemented the specific and explicit detailed operational and managerial instructions, systems, procedures and employment policies, including policies effecting compensation, job positions and causing employees to execute, as a term of employment, the Confidentiality and Non-Competition Agreement promulgated and mandated by Defendants JJF and LIAUTAUD.

## V. <u>CLASS AND COLLECTIVE ACTION ALLEGATIONS</u>

62. Plaintiff brings this action individually, and on behalf of similarly situated persons, and in so doing seeks certification, in accordance with Fed R. Civ. P. 23 (b) and (c), as well as 29 U.S.C. § 216(b). All Rule 23 requirements for class certification are satisfied. All requirements for collective certification under 29 U.S.C. § 216(b) are satisfied. Therefore, Plaintiff seeks certification of the following classes and collectives:

**a. "Nationwide FLSA Collective" and Collective period are defined as:**

> "All individuals who are currently or were formerly employed by Defendants JJF or LIAUTAUD as salaried ASMs, at any JIMMY JOHN'S® Sandwich Shop nationwide, and who have not been paid all

> wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Nationwide FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the FLSA Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

**b. "Illinois IMWL Class" and Class Period are defined as:**

> "All individuals in Illinois, who are currently or were formerly employed as salaried ASMs at any JIMMY JOHN'S® Sandwich Shop, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, pursuant to the IMWL, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Illinois IMWL Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

**c. "The SEVERSON Illinois FLSA Collective" and Collective Period are defined as:**

> "All individuals who are currently or were formerly employed by Defendants JJ SEVRSON, TODD SEVERSON or BROOKE SEVERSON, as salaried ASMs, at any SEVERSON JIMMY JOHN'S® Sandwich Shop, and who have not been paid all

> wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the SEVERSON Illinois FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

**d. "The SEVERSON IMWL Class" and Class Period are defined as**:

> "All individuals who are currently or were formerly employed, at a SEVERSON JIMMY JOHN'S® Sandwich Shop, located within the State of Illinois, as salaried ASMs, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the SEVERSON IMWL Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

**e. "Declaratory Class" and Class Period are defined as:**

> "All current employees of Defendants who executed the Confidentiality and Non-Competition Agreement (Exhibit A), at any time, and former employees of Defendants that executed it and were separated from their employment on or before the date that is two (2) years preceding the date of

> commencement of this action through the date of judgment in this action."

Excluded from the Declaratory Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

**f. "Illinois IMWL Defendant Class" and Class Period are defined as:**

> "All franchisees of all JIMMY JOHN'S® Sandwich Shops, located within the State of Illinois, at which salaried ASMs have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Illinois IMWL Defendant Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

**g. "Defendant Declaratory Class" and Class Period are defined as:**

> "All JIMMY JOHN'S® Sandwich Shop franchisees who required their employees to execute the Confidentiality and Non-Competition Agreement (Exhibit A), at any time."

Excluded from the Defendant Declaratory Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is

assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

**A. Rule 23 Class Allegations**

63. Class certification, in accordance with Fed R. Civ. P. 23 (b) and (c) is appropriate for the following claims:

- **a. Second Claim:** Violations of the IMWL, brought by Plaintiff, against Defendant JJF and Defendant LIAUTAUD;
- **b. Fourth Claim:** Violations of the of the IMWL against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON; and
- **c. Fifth and Sixth Claims**: For Declaratory and Injunctive Relief against all Defendants.

64. Class Definitions and Class Periods for each are set forth in the preceding paragraphs.

65. **Numerosity:** Defendants have collectively employed over 200,000 geographically disbursed persons during the relevant time period. The persons in each of the Classes identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation is based are presently within the sole control of Defendants. Upon information and belief, there are thousands of members in each Rule 23 Plaintiff Class. Additionally, it would be impracticable to join each of the Defendant franchisees in a single action given that Defendant's own web site proudly boasts that it "currently [has] over 2000 stores open" across the United States. *See* https://www.jimmyjohns.com/company/history/.

66. **Commonality:** There are numerous questions of law and fact common to the

Classes that predominate over any questions affecting only individual class members. Because the Defendants and the proposed Defendant classes have acted in the same manner with respect to all members of the Plaintiff class by implementing company-wide policies, the Court's determination regarding the named Defendants' conduct will apply to all Defendant class members. The questions of law and fact common to the Classes predominate over any question solely affecting individual members of any Class, including, but not limited to:

a. Whether all or some of the Defendants employed Plaintiff, and members of the Class, and whether Defendants were joint or single employers, within the meaning of the applicable statutes;

b. Whether Defendant LIAUTAUD or Defendant JJF contrived, authored, drafted, modified, copyrighted, approved for use or required the use of the Confidentiality and Non-Competition Agreement as a condition for employment at JIMMY JOHN'S® Sandwich Shop;

c. Whether the Confidentiality and Non-Competition Agreement is a standard form contract that is required to be signed by all Defendants' employees as a condition of their employment at a JIMMY JOHN's® Sandwich Shop;

d. Whether the Franchise Agreement between Defendant JJF and its Operator/Franchisees requires use of the Confidentiality and Non-Competition Agreement with all employees;

e. Whether Defendant LIAUTAUD is the employer or joint employer, or is otherwise responsible for the violations alleged herein, because of his complete exercise of control over Defendant JJF, the other Defendants, all

Operator/Franchisees (per the terms of their Franchise and related agreements) and over every employee working at any JIMMY JOHN's® Sandwich Shops nationwide;

f. Whether the Confidentiality and Non-Competition Agreement is a standard form agreement, was drafted by Defendants and is not subject to negotiation by Plaintiff and members of the Class;

g. Whether Defendant JJF or Defendant LIAUTAUD are parties to or third party beneficiaries of the Confidentiality and Non-Competition Agreement;

h. Whether the Confidentiality and Non-Competition Agreement is valid;

i. Whether the Confidentiality and Non-Competition Agreement is unconscionable, oppressive, against public policy, injurious to the public, injurious to trade, commerce and completion, overly broad, overly restrictive, too broad in scope, unduly burdensome and cumbersome or otherwise in violation of applicable laws;

j. Whether the Confidentiality and Non-Competition agreement is a reasonable means to meet a legitimate business interest of Defendants;

k. Whether Defendants have any relationships with nearly permanent customers, or customers that it spent significant resources obtaining and developing, that the Confidentiality and Non-Competition Agreement is necessary to preserving or operates to protect;

l. Whether Defendants' confidentiality restrictions in the Confidentiality and Non-Competition Agreement are vague, ambiguous, overly broad,

uncertain and contain prohibitions against disclosures of readily and widely publicly available information;

m. Whether this Court can modify/blue-pencil the Confidentiality and Non-Competition Agreement pursuant to the express inclusion of such a grant of authority in the Agreement;

n. Whether the Confidentiality and Non-Competition Agreement requires interpretation, construction or modification due to vague, ambiguous, unclear and incomplete language, terms and provisions that render unclear the Parties' respective legal rights, duties, obligations and interests thereunder;

o. Whether the Confidentiality and Non-Competition Agreement is intended to be subject to Judicial interpretation and modification by virtue of the inclusion of the blue-pencil provision expressing the Parties' agreement to and reasonable expectation of Judicial interpretation and modifications;

p. Whether Defendants JJF and LIAUTAUD exercise operational control and authority over all JIMMY JOHN'S® Sandwich Shops nationwide;

q. Whether Defendant LIAUTAUD is an individual Operator/Franchisee (subject to the Franchise Agreement and related Agreements of Operator/Franchisees of any JIMMY JOHN'S® Sandwich Shop);

r. Which Defendants create and require the job titles, job positions and job descriptions uniformly used at JIMMY JOHN'S® Sandwich Shops nationwide;

s. Whether Defendant JJF or Defendant LIAUTAUD create, implement,

mandate, permit or allow the pay grades and job classifications as "exempt" or "non-exempt", whether directly or indirectly;

t. Whether all ASMs are similarly situated;

u. Whether Defendant JJF and Defendant LIAUTAUD participate in or exercise significant control over all JIMMY JOHN'S® Sandwich Shops with regard to the operations and management of the JIMMY JOHN'S® Sandwich Shops, overall, and with regard to the payment of compensation to ASMs, job responsibilities of ASMs, required number of hours worked by ASMs, the hiring and termination of ASMs, the policy of misclassifying ASMs as "exempt," the calculation and determination of any bonuses awarded to ASMs, the handling of complaints by ASMs regarding working conditions, or the determination of optimal labor budgets in connection with the time worked, and job duties of, ASMs at all JIMMY JOHN'S® Sandwich Shops nationwide;

v. Whether Defendant JJF and Defendant LIAUTAUD have the right to qualify and approve all ASMs for employment at each of their JIMMY JOHN'S® Sandwich Shops or the right to terminate ASMs at any JIMMY JOHN'S® Sandwich Shop nationwide;

w. Whether Defendant JJF and Defendant LIAUTAUD authored, modified, approved, authorized or required the utilization of the very specific, and standard, rules governing all employees at JIMMY JOHN'S® Sandwich Shops, including but not limited to: basis for termination and discipline, late arrival policy, sick and shift replacement policy, dress code, cell

phone use, restrictions on internet use and postings related to work even during non-working hours, language fluency requirements, etc.;

x. Whether Defendant JJF and Defendant LIAUTAUD provide the training and certification of ASMs working at each of their JIMMY JOHN'S® Sandwich Shops;

y. Whether Defendant JJF and Defendant LIAUTAUD control the scheduling, shifts worked and duties performed by ASMs at each of their JIMMY JOHN'S® Sandwich Shops;

z. Whether Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON have the right to exercise their discretion and re-define ASM job duties, responsibilities and terms of employment at any JIMMY JOHN'S® Sandwich Shop;

aa. The relationship between Defendants;

bb. Whether Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON caused, either directly or by acting as agents of Defendant JJF and Defendant LIAUTAUD and enforcing their policies and directions, ASMs to be paid a salary or failed to pay ASMs all wages owed to the ASMs, including, but not limited to, minimum wages, wages and overtime compensation;

cc. Whether any or all of Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Classes;

dd. Whether Plaintiff and members of the Classes are non-exempt employees of any of the Defendants;

ee. Whether Plaintiff and members of the Classes were misclassified as "exempt" from the overtime provisions of the IMWL and/or other applicable wage laws;

ff. Whether any or all of Defendants engaged in an intentional and knowing, continuing policy, pattern or practice of misclassifying ASMs, including Plaintiff and members of the Class, as "exempt" employees and required, caused to suffer or permitted ASMs to perform work in excess of 40 hours per week without compensating them at 1 ½ times the regular rate of pay for all work performed in excess of 40 hours;

gg. Whether any or all of Defendants failed to pay Plaintiff and ASMs prevailing minimum wages;

hh. Whether any or all of Defendants knew or should have known that ASMs were erroneously classified as "exempt" or required to work so many hours that their effective hourly rate was below the legally permissible minimum wage;

ii. Whether any or all of Defendants intentionally, willfully and/or knowingly failed to pay Plaintiff and members of the Classes as "non-exempt" employees or an amount not constituting fair and lawful wages under state or federal law;

jj. Whether any or all of Defendants violated the IMWL by refusing and/or failing to pay Plaintiff and members of the Classes wages and overtime compensation;

kk. Whether Defendants' policy, pattern or practice of misclassifying ASMs

as exempt from receiving hourly pay and overtime compensation was done willfully and/or with reckless disregard;

ll. Whether any or all of the Defendants failed to pay ASMs minimum wages, overtime wages, for all hours worked and in a timely manner, in compliance with the IMWL;

mm. Whether all of the Rule 23(b)(2) Class Members are similarly situated;

nn. Whether all of the Rule 23(b)(2) Class Members executed the same or substantially similar Confidentiality and Non-Competition Agreements;

oo. Whether any or all of the Defendants have acted or refused to act on grounds generally applicable to the Rule 23(b)(2) Class, thereby making relief appropriate with respect to the Rule 23(b)(2) Class as a whole;

pp. Whether any or all of the Defendants knew or should have known that the Confidentiality and Non-Competition Agreement was unconscionable, against public policy, in contravention of trade, commerce and competition, overly burdensome, unduly restrictive, ambiguous, vague or incomplete or otherwise in violation of the law, void and unenforceable; and

qq. Whether any or all of the Defendants should be enjoined from enforcing or continuing to use the Confidentiality and Non-Competition Agreement.

67. **Typicality:** The claims of Plaintiff are typical of the members of each of the Classes. The defenses of the proposed Defendant class representatives are typical of the defenses of the Defendant class. The Defendant class representatives have the same interests as the proposed Defendant class members, all of whom are similarly situated, and are acting in the

same manner with respect to the Plaintiff classes.

68. **Adequacy:** Plaintiff will fairly and adequately represent the interests of each of the Classes. Plaintiff can and will adequately represent and protect the interests of the Classes and has no interests that conflict with or are antagonistic to the interests of Class members. Plaintiff has retained attorneys competent and experienced in class actions. No conflict exists between Plaintiff and Class members. Similarly, the named Defendants and proposed Defendant class representatives will adequately and fairly represent the interests of the Defendant class. The Defendants likewise have no antagonistic or conflicting interests when compared with the Defendant class members.

69. **Superiority:** A class action is superior to other available methods for their fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individual employees/plaintiffs either lack the financial resources or cannot justify the commitment of the large financial resources necessary to vigorously prosecute separate lawsuits in federal court and/or state court against large corporate defendants. The interests of judicial economy favor adjudication of the class claims alleged herein on a class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually.

70. Certification pursuant to Fed. R. Civ. P. 23(b)(1)(A) is proper for both the Plaintiff and Defendant classes because the maintenance of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to interpretations of a uniform Confidentiality and Non-Competition Agreement and associated terms and obligations that would establish incompatible standards of conduct for the Defendants.

Furthermore, certification under Fed. R. Civ. P. 23(b)(1)(B) is proper because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other class members not a party to the adjudication or would substantially impair or impede their abilities to protect their interests.

71. Certification pursuant to Fed. R. Civ. P. 23(b)(2) is proper for the Plaintiff classes because Defendants have acted or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Any monetary damages would be merely incidental to the declaratory and injunctive relief sought.

72. Certification pursuant to Fed. R. Civ. P. 23(b)(3) is appropriate for both the Plaintiff and Defendant classes because the questions of law or fact common to class members predominate over any questions affecting only individual class members.

**B. FLSA Collective Allegations**

73. Plaintiff brings his FLSA claims pursuant to Section 216(b) of the FLSA. 29 U.S.C. § 216(b). Under Section 216(b) FLSA violation claims are brought and maintained as an "opt-in" Collective Action. *Id*.

74. Defendants have deliberately, willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as described above, by misclassifying ASM employees as "exempt," thereby failing and/or refusing to properly pay Plaintiff, and other similarly situated ASMs, minimum wages and overtime compensation in accordance with §§ 206 and 207 of the FLSA.

75. Defendants knew or should have known that said ASMs were not exempt employees under the FLSA. Defendants willfully violated the FLSA by misclassifying Plaintiff,

and all other similarly situated ASMs, as exempt employees; therefore, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

76. Plaintiff and all other ASMs are similarly situated in that they all are or were subject to Defendants' common policy, plan or practice of designating them as exempt from the overtime requirements of the FLSA, when in fact their work and job duties as required and defined by Defendants do not qualify them to be exempt.

77. Defendants are liable for improperly compensating Plaintiff and members of the FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are thousands of similarly situated current and former ASMs in the Nationwide FLSA Collective and hundreds of ASMs in the SEVERSON FLSA Collective. Defendants, individually or in concert, caused ASMs to be misclassified as exempt and denied minimum wages, wages and the overtime premium in violation of the FLSA. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## IV. FACTUAL BACKGROUND

### A. Plaintiff WHITON

#### 1. Plaintiff WHITON'S Employment by Defendants

78. Plaintiff worked for Defendants JJF, LIAUTAUD, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON at five of their JIMMY JOHN'S® Sandwich Shops. Plaintiff worked as a delivery driver from March 2013 until June 2013 at the Libertyville location. In or about June 2013, Plaintiff worked at the JIMMY JOHN'S® Sandwich Shop located at 3951 Fountain Square Place in Waukegan, Illinois, as an ASM. In or about July 2013,

Plaintiff worked at the JIMMY JOHN'S® Sandwich Shop located at 325 N. Milwaukee Avenue in Vernon Hills, Illinois, as an ASM. In or about August 2013, Plaintiff worked at the JIMMY JOHN'S® Sandwich Shop located at 5250 Grand Avenue in Gurnee, Illinois, as an ASM. In or about September 2013 until November 2013, Plaintiff worked as an ASM at the Waukegan location. From November 2013 until January 2014, Plaintiff worked at the JIMMY JOHN'S® Sandwich Shop located at 2111 Sheridan Road in Zion, Illinois, as a General Manager. For the remainder of his employment, from January 2014 until March 1, 2014, Plaintiff worked as an ASM at the Gurnee location.

79. As an ASM, Plaintiff routinely worked about 65-70 hours per week and was not paid minimum wages and never paid wages or overtime compensation for any hours he worked in excess of 40 hours per week or eight hours per day. Plaintiff was paid a salary of $500 per week. Plaintiff worked at least 50 hours every week and was provided a salary as an ASM by Defendants. Defendants orally advised Plaintiff that he was required to work in excess of 50 hours per week as an ASM, and also provided the requirement in writing in standard and uniform ASM job description, Operations Manual, Franchise Disclosure Document, Franchise Agreement and Corporate Training Manuals and Workbooks, as well as a number of other Defendant JJF created and imposed documents, require ASMs work at least 50 hours per week.

80. Upon commencing his employment, Defendants provided Plaintiff with a stack of documents copyrighted to Defendant JJF, and known as the "New Hire Packet", that set forth rules, policies, basis for discipline or termination, dress code, operating procedures, tax forms and other documents, some of which he was required to sign as a condition of his employment, including but not limited to the Confidentiality and Non-Competition Agreement.

81. Plaintiff signed the Confidentiality and Non-Competition Agreement at the

commencement of his employment and within the State of Illinois.

82. Plaintiff considered JJF, LIAUTAUD, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON to be his employers based on the documentation the he received, the operational control and oversight provided by each of those Defendants, the authority of each of those Defendants to terminate his employment or cause him to be disciplined, the lack of any discretion or control in terms of the design, control or operations of the Owner/Franchisee, manager or other employees at the JIMMY JOHN'S® Sandwich Shops where he was employed.

83. All representations made to him by Defendants led Plaintiff to believe that ultimate control of all aspects of the JIMMY JOHN'S® Sandwich Shops where he worked was vested in Defendant JJF and Defendant LIAUTAUD.

84. Plaintiff attended training conducted by and at Defendant JJF, at its headquarters in Champaign, Illinois, and through that training his belief was confirmed regarding the identity of his employers, by among other things:

a. Paperwork, training manuals, operating guidelines and other written materials that made it clear that Defendant JJF and Defendant LIATUAD were his employer with ultimate authority to hire and fire him, approve him as an assistant manager, set forth his job duties, establish and enforce every detail of operating procedures at the JIMMY JOHN'S® Sandwich Shops where he worked, audit his work, evaluate his work for purposes of determining any bonus, set his compensation and hours, set the formula by which he was paid a bonus and in all other ways manage every detail of his job duties and responsibilities as an employee at the JIMMY JOHN'S® Sandwich Shops;

b. Trainers made affirmative demands that trainees contact Defendant JJF with any and all issues, including issues involving routine operations, employment or compensation disputes;

c. Oral and written representations provided to Plaintiff and other trainees clearly identified Defendant LIAUTAUD as the ultimate person in charge, the individual responsible for the policies, procedures, rules, requirements and obligations of employees and made clear he was very involved and had ultimate authority over all aspects of the operations of every one of the JIMMY JOHN'S® Sandwich Shops nationwide; and

d. Plaintiff spoke with other trainees from geographically diverse locations that confirmed their nearly identical operations, job duties, compensation and involvement of Defendant JJF and Defendant LIAUTAUD in the operations of their respective JIMMY JOHN'S® Sandwich Shop.

85. The JIMMY JOHN'S® Sandwich Shops where Plaintiff was employed were frequently inspected, analyzed and evaluated by Defendant JJF's Business Coach on virtually every aspect of the daily operations, including but not limited to: cleaning procedures, sandwich making procedures, compliance of employees dress code, compliance with labor and supply budgets, compliance with its reporting requirements to Defendant JJF, maintenance of the point-of-sale system, accounting and bank deposit procedure.

86. Defendant JJF's Business Coach requires changes, provides additional compliance training, requires remediation efforts, authorizes adjustments to procedures, and ultimately scores compliance with a score that is utilized to determine Plaintiff's and other ASMs' bonuses, if any.

87. In the position of Defendants' delivery driver, Plaintiff had the primary job duty to deliver sandwiches and other food items to customers' homes and workplaces; however, he was also expected and required to engage in many other job duties (unrelated to driving), such as taking orders, cleaning and making sandwiches.

88. In the position of delivery driver, Defendants required Plaintiff to maintain and pay for safe, legally operable, and insured automobiles when delivering sandwiches and other food items.

89. Plaintiff was required by Defendants to incur the cost for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, depreciation, and cell phone use while delivering sandwiches for the primary benefit of Defendants. Defendants did not adequately compensate Plaintiff or reimburse him for such costs.

90. Defendants required Plaintiff to sign documents attesting of his full automobile insurance coverage as a requisite to driving for Defendants.

91. Defendants did not reimburse Plaintiff for his automobile insurance while driving for the sole benefit of Defendants.

92. Defendants did not provide Plaintiff with GPS or a mobile phone to enable accurate and efficient deliveries. Yet, Defendants required him to maintain a cell phone and be reachable by Defendants to communicate business responsibilities while driving and on duty for Defendant. Therefore, Plaintiff used his personal mobile phone to access GPS systems, to make phone calls to Defendants' store or customers or to otherwise communicate with Defendants in connection with the performance of his driver duties.

93. Defendants paid Plaintiff $8.25 per hour as a delivery driver.

94. Defendants have a computer system that allows it to keep track of the number of deliveries and the location of each delivery made.

95. During the applicable time period, the IRS business mileage reimbursement rate ranged between $0.500 and $0.565 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.55 per mile during the same period.

96. The average cost of owning and operating a vehicle, as described above, is determined using the average “driver” and not the average “delivery driver.” The nature of delivery driving includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures. “Delivery drivers,” such as Plaintiff, experience lower gas mileage, more frequent vehicle maintenance, and higher repair costs than those contemplated for the average “driver.”

97. Defendants failed to reimburse Plaintiff’s automobile expenses to such an extent that his net wages were diminished beneath federal minimum wage requirements.

98. While Defendants employed Plaintiff as a driver, he was required to work off-the-clock, while performing ancillary duties, such as closing duties.

99. Defendants’ managerial employees would clock Plaintiff out of his shift prior to his finishing his closing duties, yet require him to remain working until the closing duties were complete.

100. Plaintiff would be required to continue working after the managerial employee would clock him out.

101. Plaintiff was not compensated for his work performed off-the-clock while

performing closing duties.

102. As such, Plaintiff was not paid minimum wages, all wages due and overtime wages for all hours worked in excess of 40 hours per week.

**2. Other Facts Relevant to Plaintiff's Claims**

103. After terminating his employment with Defendants, Plaintiff actively refrained from applying to *any* job in the food services industry out of fear and uncertainty as to whether such applications would constitute a breach of the Confidentiality and Non-Competition Agreement. As a result, Plaintiff's employment opportunities were severely limited in scope.

104. Plaintiff was required to sign the same "form" Confidentiality and Non-Competition Agreement, and that very same form agreement is required to be signed by all employees at any JIMMY JOHN'S® Sandwich Shop.

105. Plaintiff is uncertain and confused about his legal interests, duties, obligations responsibilities and rights under the Confidentiality and Non-Competition Agreement due to the same vague, ambiguous, incomplete, unclear, missing or legally inconsistent and impermissible language, terms and provisions. Any reasonable person or party to the Agreement would suffer the same uncertainty and lack of clarity and Plaintiff. This Court's action in interpreting, constructing, determining validity or modifying/blue-penciling the Agreement will fully and finally resolve such uncertainty and clearly and finally establish whether the Confidentiality and Non-Competition Agreement is valid and enforceable, and if so provide the Parties, as well as the Declaratory Class members, necessary clarification and declaration of their legal interests, rights, duties and obligations so as to avoid unwitting breach and encourage compliance with this Court's construction of a legally permissible contract between the Parties.

**B. Relationship between Defendants JJF and LIAUTAUD and Operators/Franchisees**

106. Defendant LIAUTAUD and Defendant JJF exercise substantial and nearly complete control over all JIMMY JOHN'S® Sandwich Shops.

107. Defendant JJF owns and operates many of the JIMMY JOHN'S® Sandwich Shops.

108. Defendant JJF franchises the majority of JIMMY JOHN'S® Sandwich Shops, but has made public representations confirming it controls all (including Franchisee) of its JIMMY JOHN'S® Sandwich Shops and Defendant JJF utilizes explicit contractual language, in a number of documents with its Operator/Franchisees, that unambiguously establishes its control.

109. Defendant JJF enters into a standard Franchise Agreement and associated documents with each of its Operator/Franchisees ("JJF Franchise Agreement").

110. Defendant JJF is required by law to provide Operator/Franchisees with a FDD.

111. Defendant JJF requires all of its Operator/Franchisees to follow the terms and conditions set forth in a document known as the "Confidential Operations Manual."

112. Operator/Franchisees are basically just "buying" themselves a managerial position at a JIMMY JOHN'S® Sandwich Shop, as Defendant JJF requires all Operator/Franchisees to operate and manage their shops, prohibits Operator/Franchisees from operating any other business, requires that all Operator/Franchisees satisfactorily complete Defendant JJF management training and certifications, requires all Operator/Franchisees to strictly adhere to all operational practices and systems, requires Operator/Franchisees to submit to performance audits, receive reprimands and implement remediation or changes (with threat of franchise termination for non-compliance) and provides for Defendant JJF control of every aspect of their operations.

113. Defendant JJF and Defendant LIAUTAUD demonstrate that Operator/Franchisees

are just glorified employees who "pay" for their positions, when answering their own question on their website, https://www.jimmyjohns.com/company/franchise/who-we-let-do-this-deal/, "Who do we Let Do this Deal" Defendants answered as follows:

**Think you have what it takes?**

1. You have to have the cash.

2. Real passion for ***my*** brand. If you don't dig it as much as we all dig it, this brand is not for you!

3. You've got to be a good, hard-working, well-intended individual, who respects yourself and others.

4. You've got to take specific, detailed, & disciplined direction extremely well.

5. You can't be a criminal.

6. You've got to love life, kids, music, dancing, your grandparents & sandwiches.

7. Last, be excited to work harder than you ever have in your life. (Emphasis added).

114. Defendant JJF's control over Operator/Franchisees, and the JIMMY JOHN'S® Sandwich Shops they operate, is further evidenced in a document titled "*Make or Break Statement of Commitments and Lifestyle*." Defendant JJF requires that potential Operator/Franchisees commit to and initial 13 "commitments" such as:

3. I understand that my store must be in compliance & have 2 certified managers in each store, otherwise, my application for any future stores will be denied.
4. I understand that arriving early in the morning (5 am) is crucial to the success of the business. The store must be ready by 10 am or earlier in order to handle the unexpected.
5. I understand that delivering and catering only to those within my delivery area is critical to my success. My delivery area will be set by JJF and only JJF can change it. I will adhere to the boundaries that are set.
6. I understand that vacations or personal time with friends and family could be interrupted so that I can correct any deficiencies in my restaurants. This includes covering for a teammate when they are truly sick. Running a restaurant is a chosen lifestyle. It is extremely difficult; I accept and embrace that.
7. I understand that training will be 6-day weeks for a minimum of 10 hours a day and that it is intense, focused, physical, and disciplined. Without 100% buy-in, I will ultimately fail.
8. I understand that perfect product is critical to the survival of my store and that I must;
   a. Never use bread older than 4 hours
   b. Have a mayo master on the make line 100% of the time
   c. Use the mayo scoop on every sandwich
   d. Leave the mayo on the bread
   e. Make perfect sandwiches, no tomato means no tomato
   f. Have a slicing master on every shift
9. I am committed to following Jimmy Systems 100% of the time including;
   a. Auditing every line in the system
   b. Auditing the quality of execution on the line
   c. Using business coaches report as a tool
   d. Using only a fixed schedule
   e. Executing 100% of the requirements in the coaches report
   f. Staffing my stores for the sales I want to do
   g. Not discounting or giving out coupons
   h. Comitting to a systematic guerilla sampling program

115. **Operator/Franchisee Controlled By Defendant JJF:** Defendant JJF requires that every Operator/Franchisee actually operate their JIMMY JOHN'S® Sandwich Shops, prohibits Operator/Franchisee from operating any other businesses, describes in detail all of the Operator/Franchisee job duties, requires Operator/Franchisee to go through Defendant JJF's management training, monitors and audits each Operator/Franchisee's ongoing performance, has authority to require Operator/Franchisee to engage changes or remedial efforts, and has the right to terminate Operator/Franchisee's Agreement and rights for not fully and satisfactorily performing management or general operational duties.

116. Operator/Franchisee acts as an agent of Defendant JJF and Defendant LIAUTAUD, or simply follows and carries out precise and explicit operational directions, in connection with the performance of its duties in connection with a JIMMY JOHN'S® Sandwich Shop.

117. Defendant JJF explicitly establishes its control over Operator/Franchisee and each

JIMMY JOHN'S® Sandwich Shop, by providing in its Franchise Agreement, in pertinent part:

a. We have the right to develop, operate, and change the Franchise System in any manner that is not specifically prohibited by this Agreement. Whenever we have reserved in this Agreement a right to take or to withhold an action, or to grant or decline to grant you the right to take or omit an action, we may, except as otherwise specifically provided in this Agreement, make our decision or exercise our rights based on information readily available to us and our judgment of what is in the best interests of us, JIMMY JOHN'S® Restaurant franchisees generally, or the Franchise System at the time our decision is made, without regard to whether we could have made other reasonable or even arguably preferable alternative decisions or whether our decision promotes our financial or other individual interest;

b. You acknowledge that the Franchise is nonexclusive, that you have no territorial protection whatsoever (even if you provide delivery services), and that we (and our affiliates) retain the right at all times during this Agreement's term to engage in any and all activities that we (and they) deem appropriate, wherever and whenever we (and they) desire, and whether or not such activities compete with your RESTAURANT…; and

c. As a JIMMY JOHN'S® Restaurant franchisee, you must comply with this Agreement and all mandatory specifications, standards, operating procedures, and rules (collectively, "System Standards") that we periodically prescribe for JIMMY JOHN'S® Restaurants in order to

maintain the high and consistent quality that is critical to attracting and keeping customers for JIMMY JOHN'S® Restaurants.

118. **Monitoring of Day-to-Day Operations**: Defendant JJF closely monitors the day-to-day operations at each of its JIMMY JOHN'S® Sandwich Shop, openly and secretly, through frequent and regular inspections, audits, and programs such as the guest satisfaction and "mystery shop" programs. Defendant JJF also hires third party service providers that Operators/Franchisees are required to agree to and pay for, to assist in the auditing and monitoring of day-to-day operations.

119. **Business Coach**: Defendant JJF controls day-to-day operations at each of its JIMMY JOHN'S® Sandwich Shops through its own (Defendant JJF) employees, including "Business Coaches" that are charged with closely monitoring, assessing, auditing and remediating all aspects of the operation of the JIMMY JOHN'S® Sandwich Shops they are assigned.

120. In addition to numerous detailed provisions setting forth its specific control over every aspect of the operation of a JIMMY JOHN'S® Sandwich Shop, Defendant JJF ensured its ultimate and complete control by including a "catch-all" provision in the Franchise Agreement which, provides in part that it retains control of all: "*aspects of operating and maintaining the RESTAURANT that we determine to be useful to preserve or enhance the efficient operation, image, or goodwill of the Marks and JIMMY JOHN'S® Restaurants*."

121. In order to ensure that Defendant LIAUTAUD's vision and control is actuated in every JIMMY JOHN'S® Sandwich Shop, regardless of whether it is technically owned by Defendant JJF or LIAUTAUD, or financed by an Operator/Franchisee, Defendant JJF has carefully drafted its FDD, Franchise Agreement, and Operational Manual to solidify its control

of every aspect of every JIMMY JOHN'S® Sandwich Shops.

122. **Control of All Management Level Employees:** Defendant JJF maintains complete and exclusive control over approval of all management level employees at every JIMMY JOHN'S® Sandwich Shop. Specifically, Defendant JJF:

a. Requires every JIMMY JOHN'S® Sandwich Shop to employ at least one General Manager that Defendant JJF has trained, certified and otherwise approved by Defendant JJF;

b. Requires all ASMs to work at least 50 hours per week;

c. Requires every JIMMY JOHN'S® Sandwich Shop to employ at least two other management employees that have been trained, certified and otherwise approved by Defendant JJF;

d. In order to be trained by Defendant JJF, the employee must pass a pre-training enrollment test and otherwise be approved by Defendant JJF;

e. Defendant JJF requires employees at each of its JIMMY JOHN'S® Sandwich Shops to become certified (and approved as an employee by Defendant JJF) in various tasks such as "Certified Mayo Master" or "Certified Slicing Master";

f. Defendant JJF dictates the job responsibilities and working hours required by all management level employees;

g. Requires all management level employees to agree to submit to drug tests given by Defendant JSS during the training sessions; and

h. Otherwise controls all job training, job duties, job responsibilities and work performed, approval for position, oversight, auditing and termination

rights.

123. **Employee Control:** Defendant JJF is the employer of every employee at every JIMMY JOHN'S® Sandwich Shop and maintains substantial control over all aspects of employment for every employee working at a JIMMY JOHN'S® Sandwich Shop, including but not limited to:

a. Defining all job titles and positions;

b. Authoring and revising all job descriptions for positions;

c. Directing and defining every job duty, including such things as how quickly employees must be able to make a sandwich (30 seconds), get a sandwich order out the door for delivery (four minutes) or make a delivery;

d. Determining whether each job position is hourly or exempt;

e. Setting labor budgets and staffing levels;

f. Mandating employee qualifications, training, schedules, dress, and appearance;

g. Ability to terminate management and other employees it does not deem qualified or appropriate for the position;

h. Prohibiting employees' use of internet and social media use in connection with their employment;

i. Prohibiting employees from video or audio recordings of any type while at work; and

j. Requiring that Defendant JJF approve and certify every JIMMY JOHN'S® Sandwich Shop management employee.

124. **Employee "In Store Personal Grooming and Uniform Dress Code:"** Defendant JJF micromanages employees at every JIMMY JOHN'S® Sandwich Shop by mandating every employee sign, and providing to each in their Orientation Folder, compliance with Defendant JJF's standard "In Store Personal Grooming and Uniform Dress Code" which requires, among a list of other things, that all employees arrive at work "freshly showered/clean shaven," and "only one plain earring per ear" and "one plain ring per hand." The list of detailed requirements, many of which are arguably intrusive and unnecessary, is extensive and reflected by the plain language of the document that "[a]ll stores must comply with the current and any future specifications." The document is copyrighted to Defendant JJF.

125. All employment-related contracts and documents executed by Plaintiff, and members of the class, are created by, copyrighted by, uniform and mandated to be used by all employees, at all JIMMY JOHN'S® Sandwich Shops, by Defendant JJF.

126. **Control of Employees Evidenced In Confidential Operations Manual:** Defendant JJF's "Confidential Operations Manual" sets forth requirements covering every aspect of employment, including but not limited to: Rules for Employment, Additional Rules for Management, Controlling Labor Costs, Importance of Maintaining Minimum Staffing Levels, Recruiting the Ideal Jimmy John's Employee, Job Descriptions, Examples of Fair and Legal Interviewing, Group Interview, Individual Interview, Staffing, How to Determine Staffing Levels, Using the Schedule Writer, Scheduling and Using a Block Schedule, Orientation Folder, Training Employees, Training Your Staff using the 5 Step Hourly Training Process, Evaluating, Disciplining, and Terminating Employees, Employee Reviews, Disciplining Employees Using the Three-Tier Approach, The Big 3, Core Components, and Company Culture. It further provides a copy of the uniform "Orientation Folder" and the following documents that must be

given to employees: (a) Rules for Employment, (b) Additional Rules for Management, (c) In-store Personal Grooming and Uniform Dress Code, (d) Employee Confidentiality and Non-Competition Agreement, (e) Jimmy John's Driver Agreement and Eligibility Form, (f) W-4, (g) I-9 and menu cheat sheet. Then, there are other uniform forms that are to be used as appropriate, such as: Jimmy John's Application for Employment, Sub Screen 1, Sub Screen 2, Disciplinary Action Report, Employee Separation Form, In-shopper Training Chart, Driver Training Chart, and Manager Training Chart.

127. Defendant JJF maintains a website for JIMMY JOHN'S® Sandwich Shops at https://www.jimmyjohns.com/. Defendant JJF does not permit franchisees to maintain a website for their individual JIMMY JOHN'S® Sandwich Shops, use the Jimmy John's name or trademarks in connection with any domain names, homepage, electronic address or any social media, such as use of social media, such as YouTube, personal blogs, Facebook and MySpace, professional networks like LinkedIn, liveblogging tools like Twitter, virtual worlds, file, audio and video-sharing sites, or any other similar social networking or media sites or tools. Rather, any website presence must be limited that which is controlled and operated by Defendant JJF.

128. Defendant JJF processes online orders for all of its approximately 2,000 JIMMY JOHN'S® Sandwich Shops nationwide. Defendant JJF has a webpage dedicated to online customer order placement for online ordering and payment at any of its approximately 2,000 stores nationwide. https://online.jimmyjohns.com/?utm_source=google&utm_medium=cpc&utm_term=jimmy%20john's%20locations&utm_content=37437445430&utm_campaign=JJ+Brand+Group+5+-+Enhanced#/. Franchisees are not permitted to set up their own online order processing system.

129. Defendant JJF offers customers the ability to sign up for a customer account

online and place orders for food and other merchandise. https://online.jimmyjohns.com/?utm_source=google&utm_medium=cpc&utm_term=jimmy%20john's%20locations&utm_content=37437445430&utm_campaign=JJ+Brand+Group+5+-+Enhanced#/register/accountinfo. Once a customer establishes an account, the customer can order from any JIMMY JOHN'S® Sandwich Shop nationwide. Franchisees are not permitted to offer online customer accounts or keep an online database of loyal customers.

130. Defendant JJF maintains a blog at http://www.freakyfast.com/. However, franchisees are not permitted to maintain blogs related to their stores.

131. **Maintains Access and Control Over Operator/Franchisee Bank Accounts.** Defendant JJF maintains control and full access to its franchisees' business checking accounts, as set forth in pertinent part in the JJF Franchise Agreement, "Before the RESTAURANT opens, you agree to sign and deliver to us the documents we require to authorize us to debit your business checking account automatically for the Royalty, Fund contributions (defined below), and other amounts due under this Agreement and for your purchases of Trade Secret Food Products, Branded Products, Permitted Brands, and other items from us and/or our affiliates (the "Electronic Depository Transfer Account" or "EDTA"). *We may auto-debit all fees and payments you owe us and our affiliates. We will debit the EDTA for these amounts on their due dates. Funds must be available in the EDTA to cover our withdrawals, and you must report your Gross Sales as we require.* (Emphasis added).

132. **Intellectual Property and Creative Rights:** Defendant JJF retains all rights to any and all ideas, concepts, techniques, or materials (created by Operator/Franchisee or any employee of a JIMMY JOHN'S® Sandwich Shop) concerning a JIMMY JOHN'S® Sandwich Shop, regardless of whether or not it is protectable intellectual property. Defendant JJF further

requires prompt disclosure, assignment of all rights and acknowledgement that it is their sole and exclusive property. Defendant JJF does not share any benefit or ownership interest with the Operator/Franchisee.

133. **Mandating English Verbal and Written Fluency:** Defendant JJF mandates that every employee that could come in contact with a customer (essentially every employee), at any of its JIMMY JOHN'S® Sandwich Shops, be able to read, write and speak fluent English and retains the exclusive right to determine fluency through administration of Defendant JJF's own designated English fluency test, which can be administered by Defendant JJF or a third party. Defendant JJF retains the exclusive right to decide what constitutes passing fluency and, therefore, whether each employee can be employed at a JIMMY JOHN'S® Sandwich Shop. Defendant JJF mandates Operator/Franchisee compliance with this requirement (in writing), despite the fact that the requirement is overly broad by requiring English fluency in job positions where the duties and responsibilities do not require the employee to read, write and speak fluent English. It leaves no discretion to Operator/Franchisee and again retains ultimate control over employment decisions at all JIMMY JOHN'S® Sandwich Shops.

134. **Mandating Point-of-Sale System:** Defendant JJF requires that every JIMMY JOHN'S® Sandwich Shop utilize only the currently-approved point-of-sale system, which is currently provided by and proprietary to Signature Systems, Inc. Owner/Franchisee has no discretion in the point-of-sale system that is utilized.

135. **Mandating On-Line Ordering System**: Defendant JJF controls all aspects of the online ordering system that is utilized by every JIMMY JOHN'S® Sandwich Shop and only permits use of its approved online ordering system, which is currently provided by OrderTalk. Operator/Franchisee has no discretion in the online ordering system that is utilized.

136. **Mandating Back-of-Office Computers and Software:** Defendant JJF controls exactly what back-of-office computer systems must be used at each of its JIMMY JOHN'S® Sandwich Shops, requiring a Windows compatible desktop computer, use of Windows 7 or 8 and use of Microsoft Excel 2010. Defendant JJF also provides in its Franchise Agreement, that the Operator/Franchisee "(m)ust upgrade any computer-based system and/or obtain service and support as we require or as is necessary because of technological developments. There are no contractual limitations on the frequency and cost of this obligation." Operator/Franchisee has no discretion to use a different type of computer, operating system, or software.

137. **Mandating Ordering and Delivery Process**: Defendant JJF controls all aspects of the ordering and delivery process, including geographical delivery zone, delivery processes, timing of deliveries and accounting of deliveries, as set forth in part as follows in its Franchise Agreement with Operators/Franchisees:

a. "You must provide delivery services in compliance with our System Standards but only in the delivery area we specify for you (in an email or other communication) after you find the RESTAURANT's site. You acknowledge and understand that we may, at any time and from time to time, and for any or no reason, change the definition of the delivery area and, in particular, reduce its size. If we ever decide to do so, you agree, without any argument or disagreement, immediately to change the delivery services that you provide and to deliver;" and

b. "Delivery and catering services (as provided in Subsection 1.D.), including your obligation to deliver Menu Items to customers in your delivery area only with your own employed delivery drivers in compliance

> *with our procedures and not through third-party food ordering, drop-off/catering, or delivery services or systems (such as TAKEOUT TAXI); delivery driver qualifications*; your obligation *not to use third-party food ordering systems (such as campusfood.com or diningin.com);* and your obligation to *ring up and account for (in the manner we specify)* delivery and catering charges not included in the price of Menu Items." (Emphasis added).

138. **Control of Products and Services:** Defendant JJF maintains exclusive control over all products and services that are offered at a JIMMY JOHN'S® Sandwich Shop. The Franchise Agreement explicitly prohibits Operator/Franchisee from offering to sell, or selling any products or performing any services, not authorized by Defendant JJF. Operators/Franchisees have absolutely no discretion or control over the products and services offered for sale at the JIMMY JOHN'S® Sandwich Shop.

139. **Control of Pricing:** Defendant JJF establishes the pricing of all in store items, as well as pricing methods and procedures for in-store, delivery, and on-line/electronic orders.

140. **Mandating Hours and Days of Operation:** Defendant JJF sets the specific days and specific hours that each JIMMY JOHN'S® Sandwich Shop must be open for business and Defendant JJF approval is required for any deviation.

141. **Mandating Handling Procedures for Customer Complaints**: Defendant JJF requires all of its franchisees to comply with the JJF customer complaint resolution procedures. Franchisee/Operators are not free to promulgate or utilize their own processes, techniques or discretion to deal with customers or resolve customer complaints.

142. **Mandated Payment Methods:** Defendant JJF dictates the terms and type of

customer payment that every franchisee must accept at a JIMMY JOHN'S® Sandwich Shop from customers, such as requiring that credit and debit cards, other payment systems, and check verification services be accepted and prohibiting franchisees from imposing any minimum amount for the acceptance of any payment method.

143. **Mandated Bookkeeping, Accounting and Recordkeeping:** Defendant JJF controls and dictates the manner and methods for all recordkeeping, bookkeeping, data processing and accounting, including the systems, forms, formats, content and frequency of sales reports, financial performance reports, revenue reports, and other required reports.

144. **Mandated use of proprietary software and electronic media**: Defendant JJF controls, determines and requires use of, specific software and electronic media used in connection with a JIMMY JOHN'S® Sandwich Shop, all aspects of its franchisee system and its Intranet.

145. **Mandated Insurance Coverage and Terms/Conditions of Coverage:** Defendant JJF controls all aspects of insurance including not only the type of insurance and amounts of coverages required, but also the inclusion of additional covered entities, approval of the insurance contract language and specific provisions and conditions that are permissible/impermissible in the insurance contracts, the right to defend and the right to obtain insurance for the franchisee (and charge the franchisee for the insurance).

146. Numerous oral and written materials form Defendant JJF establish Defendant JJF's and Defendant LIAUTAUD's control over every aspect of the operations and existence of JIMMY JOHN'S® Sandwich Shops, from selection of employees, vetting of management employees, establishing all procedures, policies, rules and guidelines, auditing, remediating, establishing the basis for hiring, firing and being awarded bonuses or awards for all employees,

retaining authority to terminate any employee, including its relationship with the Operator/Franchisee, and other such control and management sufficient to establish Defendant JJF and Defendant LIAUTAUD as Plaintiff's, and the Class Members', employer and responsible for all wage violations and other claims arising out of Plaintiff's, and Class Members', said employment at a JIMMY JOHN'S® Sandwich Shop.

147. Defendants JJF and LIAUTAUD each mandate that all JIMMY JOHN'S® Sandwich Shops, utilize the same job titles, job positions, job descriptions, job classification, form employment documents, employment policies and practices. Defendant JJF and Defendant LIAUTAUD each set uniform job duties, job descriptions, job postings, etc., for all 2,000+ JIMMY JOHN'S® Sandwich Shops.

148. At the direction of and pursuant to the policies of Defendant JJF and Defendant LIAUTAUD, Defendants' General Managers ("GMs") are classified as "exempt" employees under the FLSA/state wage laws and are paid a salary. GMs are required to work at least 50 hours per week, in-shop. GMs have the primary managerial and supervisory responsibilities, such as hiring, firing, disciplining, setting the schedules, overseeing budgets, ordering, managing and directing employees, reporting, accounting, budgeting and other managerial/supervisory duties.

149. At the direction of and pursuant to the policies of Defendant JJF and Defendant LIAUTAUD, Defendants' ASMs are classified as "exempt" employees under the FLSA/IMWL and are paid a salary. ASMs have de minimis, limited administrative, managerial or supervisory duties. ASMs are required to work at least 50 or more hours per week, in-shop. ***More than*** 90% of ASMs time worked is spent doing the same routine, manual labor as Defendants' hourly employees, including, but not limited to, making sandwiches, baking bread, taking orders, and

checking out customers at the register, stocking and cleaning, amongst other non-exempt labor tasks.

150. In performing their primary duties, Plaintiff and members of the FLSA Collective/IMWL Class were not involved in planning Defendants' long or short term business objectives; could not formulate, affect, implement or interpret Defendants' management policies or operating practices; did not carry out major assignments that affected Defendants' business operations; did not have authority to commit Defendants in matters of significant financial impact; and could not waive or deviate from Defendants' established policies or procedures without prior approval.

151. Plaintiff and the Collective/Class's primary duties were manual in nature.

152. The performance of manual labor duties occupied the majority and almost all of Plaintiff's and the Collective/Class' working hours including overtime and non-overtime hours.

153. The overwhelming majority of the time, ASMs are working simultaneously with a GM in-shop, whom have the primary managerial/supervisory duties and direct the work of all other employees. In the rare event that an ASM is in the restaurant without a GM, the ASM still performs the same work as the hourly employees and the hourly employees have already been told, directed and trained on what to do by the GMs. There is little to no variation in the routine duties of the hourly employees and they are directed by the GMs.

154. Plaintiff, and ASMs at all JIMMY JOHN'S® Sandwich Shops, are required to work at least 50 hours per week without being paid minimum wages or overtime for any hours worked in excess of 40 hours.

155. Plaintiff makes a salary of $500 per week and has worked at least 50 hours per week every week that he has been employed as an ASM for Defendants, as required by

Defendants.

156. During the relevant period of time, Defendants employed thousands of salaried ASM employees around the country with job duties and descriptions that are, for all intents and purposes, identical to Plaintiff. Plaintiff and other similarly situated ASMs and report directly to GMs, in who resides the real management/administrative authority of the uniformly and systemically operated JIMMY JOHN'S® Sandwich Shops.

157. Defendant JJF exercises significant managerial control over all JIMMY JOHN'S® Sandwich Shops, both wholly-owned and franchise restaurants. Defendant JJF has operating and management policies and procedures that apply uniformly to all restaurants nationwide. No matter the size of the restaurant or the location, every detail of how the restaurant is managed and run is uniformly fixed, mandated and controlled by Defendants through JJF's policies, directives and mandated procedures. Defendant JJF manages and operates, both contractually and in practice, all JIMMY JOHN'S® Sandwich Shops and makes routine, monthly on-site visits to all JIMMY JOHN'S® Sandwich Shops, both wholly-owned and franchises, to make sure that all policies and procedures as set forth by, established by and mandated by Defendant JJF, are being implemented and followed.

158. Defendant JJF and Defendant LIAUTAUD created and mandate all of the job positions and exemption classifications for all of the JIMMY JOHN'S® Sandwich Shops in an effort to maintain management control and continuity amongst the brand and company.

159. Defendant JJF exercises significant control over the management of all JIMMY JOHN'S® Sandwich Shops by training on, monitoring closely and mandating policies, procedures and practices related to payroll, employee hours and labor budgets.

160. Defendant JJF and Defendant LIAUTAUD are both fully aware that ASMs are

paid on a salary, when they should be paid on an hourly basis.

161. In fact, Defendant JJF, through its extensive training, regular oversight of each JIMMY JOHN'S® Sandwich Shop, and directions provided TO each JIMMY JOHN'S® Sandwich Shop from its "Business Coach," provides formulas and metrics for determining labor budgets. These formulas and metrics provide for ASMs to work long hours and to be paid on a salaried basis.

162. All ASMs nationwide are classified as "exempt" pursuant to Defendant JJF's management policies, practices and mandates.

163. All ASMs nationwide have the same job description and perform the same duties pursuant to Defendant JJF's management policies, practices and mandates.

**C. ASMs Are Not Exempt under the FLSA or IMWL**

164. At all times herein set forth, Plaintiff and members of the Class and FLSA Collective are "employees" of Defendants within the definition of the FLSA and the IMWL.

165. At all times herein set forth, each Defendant is an "employer" within the definition of the FLSA and IMWL.

166. The FLSA and IMWL have certain exemptions from their overtime requirement including exemptions for bona fide executive or administrative employees. 29 U.S.C. § 213(a)(1); 820 ILCS 105/4a(2)(E). Defendants' ASMs do not qualify as bona fide executives or administrative employees under the FLSA or IMWL. *Id*.

167. To establish an employee is a bona fide executive employee and exempt from being paid overtime compensation under the FLSA or IMWL, an employer must show: (1) the employee is compensated on a salary basis at a rate of not less than $455 per week; (2) the employee's *primary* duty is management of the enterprise in which the employee is employed or

of a customarily recognized department or subdivision; (3) the employee *customarily and regularly* directs the work of 2 or more other employees; and (4) the employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(1)(2006).

168. To establish an employee is a bona fide administrative employee and exempt from being paid overtime compensation under the FLSA, IMWL and other state wage laws, an employer must show: (1) that the employee's primary duty is the performance of work directly related to the management or general business operations of the employer or the employer's customers; and (2) that the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.201(a); 29 C.F.R. § 541.202(a).

169. Neither Plaintiff, nor any other ASM qualifies as either an executive or administrator under the exemptions set forth in the Code of Federal Regulations, FLSA or IMWL.

170. The frequency and time spent on "exempt" duties and the primary duties done by Plaintiff and all other ASMs do not qualify them as exempt from receiving overtime compensation as management, an executive or under any other exemption. Therefore, Defendants are not entitled to classify Plaintiff or any other ASMs as "exempt," and are required to pay them minimum wages and overtime compensation.

**D. Time Spent On Exempt v. Non-Exempt Tasks**

171. ASMs spend the majority of their time on tasks that qualify them as "non-exempt" employees, rather than "exempt" employees. Plaintiff and other ASMs and primary

duties are not managerial or administrative in nature. Plaintiff and other ASMs customarily and regularly spend *more than* 90% of their time performing non-exempt duties, including but not limited to the following enumerated duties:

a. Taking orders;

b. Checking out customers at the register;

c. Making sandwiches;

d. Slicing meat;

e. Baking bread;

f. Bagging orders;

g. Open/close restaurant;

h. Answer telephone calls;

i. Identify and react to in-restaurant repairs;

j. Stocking;

k. Cleaning; and

l. Maintenance of restaurant: facing/adjusting merchandise to face front of shelf, dusting, vacuuming, window cleaning, cleaning restrooms, fixtures, restaurant exterior, sweeping lot of trash, etc.

172. During both overtime and non-overtime hours, Plaintiff and the Collective/Class performed the manual labor tasks identified in the preceding paragraph.

173. While Plaintiff's and other ASMs' duties may slightly vary, insignificantly, based on the location where they work, the duties are substantially the same. Moreover, regardless of the location of Plaintiff and other ASMs, they all spend *more than* 90% of their time performing non-exempt duties, as alleged herein.

174. Plaintiff's and other ASMs' primary duties are composed of non-exempt duties which are more important to Defendants' business model than the few de minimis, *purportedly* exempt duties that they occasionally do.

175. Few, if any, of the duties of ASMs qualify as management or administrative duties under federal and state law because they do not relate to the management of general business operations. More than 90% of the time, ASMs perform duties consisting of carrying out the day-to-day affairs of the restaurant and do not require the exercise of discretion and/or independent judgment on matters of significance.

176. The few de minimis and *purportedly* exempt tasks ASMs may occasionally do are strictly controlled, outlined and pre-arranged as to how they are to be executed by Defendants and are closely scrutinized and supervised by GMs, Area Managers and corporate level employees of Defendants, such as the "Business Coach," to ensure compliance. ASMs are not allowed to perform any "administrative" or "executive" tasks outside of the strict limitations and confines set forth by Defendants and/or GM supervision.

177. The overwhelming majority of the job duties assigned to ASMs are also assigned to hourly employees.

178. Defendants intentionally and knowingly use ASMs to perform significant amounts of manual labor and other non-exempt functions, in order to work them long hours each week and limit the payroll budget of restaurants and to make more profit, by increasing the profitability of the restaurants and franchises. It is key to Defendants' business model that ASMs perform non-exempt tasks and duties, without receiving minimum wages or overtime compensation for hours worked in excess of 40 hours per week.

179. Defendants' violations are and continue to be willful and intentional in that they

have known all along what federal and state wage laws require and that the primary duties and tasks of its salaried ASMs are such that they are not exempt from being paid overtime.

180. As a result of Defendants' willful violations of the FLSA and the IMWL, Plaintiff and all other similarly situated ASMs have suffered damages in that they have not received proper minimum wages, wages and overtime compensation in accordance with the FLSA or IMWL.

**E. Confidentiality and Non-Competition Agreement**

181. Defendant JJF and Defendant LIAUTAUD contrived, authored and mandated use at each of its JIMMY JOHN'S® Sandwich Shops of a uniform Confidentiality and Non-Competition Agreement, in the form attached as Exhibit A.

182. Defendants all use and cause employees to execute, as a condition of being employed, the Confidentiality and Non-Competition Agreement, which provides in part:

a. JJF franchises JIMMY JOHN'S® Sandwich Shops operating at various locations throughout the country and in connection with those activities, has invested (and continues to invest) substantial time, effort, and money in developing the products sold to customers of JIMMY JOHN'S® Sandwich Shops, all of which JJF considers to be "Confidential Information," as further defined in this Agreement;

b. Pursuant to the Franchise Agreement, all employees of employer having access to the Confidential Information are required to execute this Agreement;

c. Employee understands that Employer is hiring Employee in reliance on Employer's willingness to comply with this Agreement and that Employer

would not hire Employee if she or she were not willing to do so. Employee understands that complying with this Agreement is essential to protect Employer's and JJF's legitimate business interests;

d. Employee acknowledges that JJF will own any developments in the operation of a JIMMY JOHN'S® Sandwich Shop or concerning its products that Employee might create during his or her employment;

e. Employee covenants and agrees that, during his or her employment with Employer and for a period of two (2) years after either the effective date of termination of his or her employment for any reason, whether voluntary or involuntary and whether by Employer or Employee, or the date on which Employee begins to comply with this paragraph, whichever is later, he or she will not have any direct or indirect interest in or perform services for (whether as owner, partner, investor, director, officer, representative, manager, employee, principal agent, advisor or consultant) any business which derives more than ten percent (10%) of its revenue from selling submarine, hero-type, deli-style, pita and/or wrapped or rolled sandwiches and which is located within three miles of either (1)______________________________[insert address of employment] or (2) any such other JIMMY JOHN'S® Sandwich Shop operated by JJF, one of its franchisees or any of JJF affiliates;

f. **Solicitation.** Employee agrees to disclose to Employer immediately upon receipt of any employment offers made by any competitor of Employer (as defined in Section 3 above); and

g. Confidential Information further includes, but is not limited to: (a) plans and specifications for developing JIMMY JOHN'S® Sandwich Shops; (b) training methods, materials, programs, and systems for employees of JIMMY JOHN'S® Sandwich Shops, (c) methods, techniques, menus, recipes, formats, specifications, standards, systems, procedures, sales and marketing techniques, and knowledge and experience in developing and operating JIMMY JOHN'S® Sandwich Shops; (d) marketing, advertising, and promotional programs for JIMMY JOHN'S® Sandwich Shops and the JIMMY JOHN'S® System; (e) Operations Manuals; (f) knowledge and specifications for and suppliers of ingredients, products, materials, supplies, equipment, and services used in connection with developing and operating JIMMY JOHN'S® Sandwich Shops; (g) the identities of suppliers and the terms of supplier contracts; (h) knowledge of the operating results and financial performance of JIMMY JOHN'S® Sandwich Shops; (i) ongoing product and service research and development; and (j) new site investigation or selection criteria.

183. Defendants include the Confidentiality and Non-Competition Agreement in the "Orientation Folder" for each new employee at any JIMMY JOHN'S® Sandwich Shop, along with other important forms that must be executed by the employee such as the W-4.

184. The Confidentiality and Non-Competition Agreement contractually purports to require certain affirmative duties by Plaintiff, and the Declaratory Class, including:

e. Duty to keep information confidential (paragraph 2) ("Confidentiality Duty");

f. Duty to convey ownership of any developments employee creates in "the operation of a JIMMY JOHN'S® Sandwich Shop or concerning its products" (paragraph 2(d));

g. Duty to "not have any direct or indirect interest in or perform services for (whether as owner, partner, investor, director, officer, representative, manager, employee, principal, agent, advisor or consultant) any business which derives more than ten percent (10%) of its revenue from selling submarine, hero-type, deli-style, pita and/or wrapped or rolled sandwiches and which is located within three (3) miles of either (1)__________________________[insert address of employment], or (2)any such other JIMMY JOHN'S® Sandwich Shop operated by JJF, one of its authorized franchisees, or any of JJF's affiliates (Paragraph 3) ("Non-Competition Agreement");

h. Duty to disclose to Employer immediately upon receipt of any employment offers made by any competitor of Employer (as defined in Section 3 above) (paragraph 4) ("Disclosure Duty"); and

i. Duty "to reimburse Employer and JJF for all costs and expenses, including attorneys' fees, that Employer or Defendant JJF incur to enforce this Agreement against Employee." ("Cost of Enforcement Duty").

185. The Confidentiality and Non-Competition Agreement contains an express provision by the Parties that anticipates and authorizes judicial modifications of the agreement (*i.e.*, when necessary for purposes of interpretation, construction, establishing the Parties' respective legal interests, resolving ambiguities or conforming the Agreement to comply with

applicable law). The language expressing the Parties' anticipation of judicial interpretation and modification ("blue-penciling") is provided for in paragraph 8 of the Agreement.

186. The Confidentiality and Non-Competition Agreement contains an excessively broad "Non-Competition Covenant" that is not legally permissible, valid or enforceable and therefore must be declared invalid and struck from the agreement or modified/blue-penciled to comply with the law.

187. The Confidentiality and Non-Competition Agreement is unconscionable, lacks adequate consideration, is vague and ambiguous, contains obligations that are impossible to perform, violates public policy, results in a restraint of trade, commerce and competition, impairs Plaintiff's ability to earn a livelihood, is overly broad, is unduly restrictive, contains provisions that are legally impermissible and should be declared void and unenforceable.

188. The Confidentiality and Non-Competition Agreement is so inadequately drafted and requires so many legally impermissible restrictions, that this Court would effectively be required to rewrite to the entire agreement in order to interpret, construct, establish the Parties legal interests, resolve ambiguities and make it sufficiently conform with applicable law in order to be valid and enforceable. Therefore, this Court should declare the Confidentiality and Non-Competition Agreement void and unenforceable. In the alternative, this Court should modify/blue-pencil the Agreement, as necessary, to resolve ambiguities, clarify contract terms, establish the Parties respective legal interests, clarify rights, duties and obligations and ensure that the provisions conform and comply with Illinois law.

189. Plaintiff, and members of the Declaratory Class, are predominantly entry-level, low wage, fast food restaurant employees that were coerced into signing the unconscionable Confidentiality and Non-Competition Agreement, without adequate consideration and on a

"take-it-or-leave-it" basis, as a condition of their employment with Defendants. Plaintiff, and the Declaratory Class members did not participate in the drafting, lacked sufficient bargaining power to negotiate any terms and lacked the financial resources to seek legal counsel prior to executing the Confidentiality and Non-Competition Agreement, or to oppose or decline execution of the Confidentiality and Non-Competition Agreement.

190. The practical effect of the Parties' and Declaratory Class Members' execution of the Confidentiality and Non-Competition Agreement is to cause employees to remain employees of Defendants without bargaining power to negotiate or effectively address working conditions, restrain the ability of Plaintiff to obtain alternative employment in the event of separation including unlawful termination by Defendants, adversely impact competition, commerce and trade and otherwise violate public policy and Illinois law.

191. The geographic restriction in the Confidentiality and Non-Competition Agreement is impossible to accurately calculate due to a missing definition of the term "Affiliate," but even excluding that term from consideration the geographic restriction is overly broad, unduly burdensome and cumbersome and impermissible under Illinois law. At a minimum, the Parties and the Declaratory Class are restricted from working in an area that is over 6,000 miles large, at innumerable types of businesses (*i.e.*, convenience stores, local coffee shops, sandwich shops, snack bars, cafeterias, family restaurants, etc.), in any capacity (since "services" and "indirect and direct interest" are undefined terms), for a period of two years in 44 different states and the District of Columbia.

192. The scope of activities restricted by the Confidentiality and Non-Competition Agreement is unclear and ambiguous due to the lack of definition of key terms, however its failure to define the specific services/activities that are restricted make it not only impossible to

comply with, but also void and unenforceable under Illinois law.

193. The activity restriction that limits Plaintiff and Declaratory Class Members (entry-level, unskilled employees) from subsequently becoming an "owner, partner, investor, director, officer, representative, manager, employee, principal, agent, advisor or consultant" in any business "that derives more than 10% of its revenue from selling a range of sandwiches, pitas, wraps or rolls" is overly broad and restrictive and is void and unenforceable under Illinois law.

194. The Confidentiality and Non-Competition Agreement is unnecessary and does not serve any legitimate protectable business interests of any of the Defendants or protect any of Defendants' relationships with nearly permanent customers. The recitation of alleged confidential information in the Confidentiality and Non-Competition Agreement is bizarre. For example, the Agreement lists as confidential menus, which are displayed in-store and online for the public to see, and the method of making sandwiches, which are made in front of customers. It takes no steps to maintain the confidentiality of these things. For example, if Defendants refused to tell people what sandwiches they sell, Defendants would not sell any sandwiches.

195. The confidentiality provision, paragraph 2, of the Confidentiality and Non-Competition Agreement contains vague, incomplete and unclear language, imposes confidentiality restrictions on information that is widely and readily publicly available and is overly broad, unduly burdensome, impossible to perform, unnecessary to protect any trade secrets or confidential information or otherwise not legally permissible under Illinois law and is therefore void and unenforceable as written.

196. Absent Declaratory and Injunctive Relief, Defendants will continue to mandate that employees execute the Confidentiality and Non-Competition Agreement and will continue to enforce it.

197. Absent a Declaratory Judgment rendering the Confidentiality and Non-Competition Agreement void and unenforceable, or in the alternative modifying/blue-penciling the Confidentiality and Non-Confidentiality Agreement (to resolve ambiguities, clarify and add necessary language, strike or modify legally impermissible and unenforceable provisions or obligations that are either unduly burdensome, or even impossible to perform), Plaintiff and members of the Declaratory Class will remain at risk of breach and imminent enforcement action, or uncertain compliance with ambiguous contract terms and provisions that are injurious to the public, injurious to trade, commerce and competition, unconscionable, lacking in sufficient consideration and otherwise legally impermissible, unenforceable and invalid.

198. Absent declaration that the Confidentiality and Non-Competition Agreement is void and unenforceable as a matter of law, Rule 23(b)(2) class members will continue to remain unaware of their legal interests, duties, responsibilities and rights, if any, under the Confidentiality and Non-Competition Agreement, risk unwitting breach; and continue to take action, or decline to take action—such as forego business and employment opportunities—due to reasonable apprehension of breach and an enforcement action where they would be responsible for Defendants' damages, costs of enforcement and their own costs of defense.

199. This Court's Declaratory Judgment can fully and finally establish the Parties' legal interests, if any, under the Confidentiality and Non-Competition Agreement. Since it is a form Agreement, subject to Illinois law, the Declaratory Judgment can resolve the issues for the entire Declaratory Class.

## VII. LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FLSA

### Plaintiff v. Defendants JJF and LIAUTAUD

200. Plaintiff, individually and on behalf of the National FLSA Collective, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically does not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

201. Plaintiff brings his First Claim individually, and on behalf of the National FLSA Collective against Defendants JJF and LIAUTAUD.

202. For purposes of this Claim, any references to Plaintiff and Defendants refer to both Plaintiff and only the Defendants that are Parties to this Claim.

203. Plaintiff brings his individual claims for violations of the FLSA, as set forth herein, related to his respective position as ASM, as well as for any such violations causing damages in any other positions he held, such as driver.

204. Plaintiff brings the Collective claims solely for violations of the FLSA, and damages sustained, by similarly situated ASMs, as set forth in the National Collective definition.

205. At all relevant times, Plaintiff and members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 20 U.S.C § § 206(a) and 207(a).

206. At all relevant times, Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

207. At all relevant times, Plaintiff and members of the FLSA Collective are employees within the meaning of the FLSA in 29 U.S.C. §§ 203(e) and 207(a).

208. At all relevant times, Defendants employed Plaintiff and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

209. Defendants engaged in a wide-spread pattern, policy and practice of violating the FLSA, as detailed in this Complaint.

210. Defendants failed to keep accurate records of time worked by Plaintiff and members of the National FLSA Collective.

211. Defendants did not make a good faith effort to comply with the FLSA with respect to compensating Plaintiff and members of the FLSA Collective.

212. Defendants' violations of the FLSA, as described in this Complaint, have and continue to be willful and intentional, thus applying a three-year statute of limitations to Defendants' violations, pursuant to 29 U.S.C. § 255.

213. As a result of Defendants willful and knowing violations of the FLSA, Plaintiff and members of the FLSA Collective, who opt into this litigation, are entitled to recover wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq*.

**SECOND CLAIM FOR RELIEF**

**Violations of the IMWL**

**<u>Plaintiff v. Defendant JJF and Defendant LIAUTAUD</u>**

214. Plaintiff, individually and on behalf of the Illinois IMWL Class, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically does not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

215. Plaintiff brings his Second Claim individually, and on behalf of the Illinois IMWL Rule 23(c) class against Defendant JJF and Defendant LIAUTAUD.

216. For purposes of this Claim, any references to Plaintiff and Defendants refers to

both Plaintiff and only the Defendants that are Parties to this Claim.

217. Plaintiff brings his individual claim for violations of the IMWL, as set forth herein, related to his position as ASM as well as for any such violations causing him damages in any other positions he was employed by Defendants, such as driver.

218. Plaintiff brings the Class claims solely for violations and damages sustained under the IMWL, by similarly situated ASMs, as set forth in the Illinois IMWL Class definition.

219. At all times herein set forth, Plaintiff is/was an "employee" within the definition of the IMWL. 820 ILCS 105/3(c); 820 ILCS 115/2.

220. At all times herein set forth, Defendants are/were an "employer" within the definition of the IMWL. 820 ILCS 105/3(c); 820 ILCS 115/13.

221. The IMWL requires an employer, such as Defendants, to compensate employees, minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

222. The IMWL requires an employer, such as Defendants, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

223. During the Class Period, Plaintiff and members of the Class did not fall under any of the exemptions provided by the IMWL. 820 ILCS 105/1 *et seq.*; 820 ILCS 115/1 *et seq*.

224. Defendants willfully, intentionally and/or knowingly improperly classified Plaintiff and members of the Class as "exempt" employees.

225. Plaintiff and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL.

226. Defendants' failure to comply with the IMWL was reckless and/or willful.

227. Defendants failed to keep accurate records of time worked by Plaintiff and members of the Class.

228. Defendants intentionally and willfully failed and/or refused to pay Plaintiff and members of the Class minimum wages and overtime compensation by violating the FLSA and IMWL, including but not limited to improperly misclassifying Plaintiff and all ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one-and-a-half times the employees' regular rate of pay, for all work performed in excess of 40 hours per week.

229. Defendants' failure to comply with Illinois law was reckless and/or willful.

230. Based on the foregoing, Plaintiff individually, and members of the Class, are entitled to recover all unpaid wages, minimum wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant §12(a) of the IMWL. 820 ILCS 105/12.

**THIRD CLAIM FOR RELIEF**

**Violations of the FLSA**

**Plaintiff v. Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON**

231. Plaintiff, individually and on behalf of The SEVERSON Illinois FLSA Collective, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically does not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

232. Plaintiff brings this Third Claim individually, and on behalf of The Severson Illinois FLSA Collective, against Defendants JJ SEVERSON, TODD SEVERSON and

BROOKE SEVERSON.

233. For purposes of this Claim, any references to Plaintiff and Defendants refer to the Plaintiff and Defendants that are Parties to this Claim.

234. Plaintiff brings his individual claim for violations of the FLSA, as set forth herein, related to his position as ASM as well as for any such violations causing him damages in any other positions he held, such as driver.

235. Plaintiff brings the Collective claims solely for violations of the FLSA and damages sustained by similarly situated ASMs, as set forth in the Collective definition.

236. At all relevant times, Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

237. At all relevant times, Plaintiff and members of the FLSA Collective were employees within the meaning of the FLSA in 29 U.S.C. §§ 203(e) and 207(a).

238. At all relevant times, Defendants employed Plaintiff and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

239. Defendants engaged in a wide-spread pattern, policy and practice of violating the FLSA, as detailed in this Complaint.

240. Defendants failed to keep accurate records of time worked by Plaintiff and members of the FLSA Collective.

241. Defendants did not make a good faith effort to comply with the FLSA in respect to compensating Plaintiff and members of the FLSA Collective.

242. Defendants' violations of the FLSA, as described in this Complaint, have and continue to be willful and intentional, thus applying a three-year statute of limitations to

Defendants' violations, pursuant to 29 U.S.C. § 255.

243. As a result of Defendants' willful and knowing violations of the FLSA, Plaintiff, and members of the FLSA Collective, who opt into this litigation, are entitled to recover unpaid wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq*.

**FOURTH CLAIM FOR RELIEF**

**Violations of the of the IMWL**

**Plaintiff v. Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON**

244. Plaintiff, individually and on behalf of The SEVERSON IMWL Class, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically does not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

245. Plaintiff brings this Fourth Claim individually, and on behalf of The Severson IMWL Class, against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON.

246. For purposes of this Claim, any references to Plaintiff and Defendants refer to the Plaintiff and Defendants that are Parties to this Claim.

247. At all times herein set forth, Plaintiff and all members of the class are/were an "employee" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c).

248. Plaintiff brings his individual claim for violations of IMWL, as set forth herein, related to his position as ASM as well as for any such violations causing him damages in any other positions he held, such as driver.

249. Plaintiff brings the class claims solely for violations and damages sustained by

similarly situated ASMs, as set forth in the class definition.

250. At all times herein set forth, Defendants are/were an "employer" within the definition of the IMWL. 820 ILCS 105/3(c).

251. The IMWL requires an employer, such as Defendants, to compensate employees, minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

252. The IMWL requires an employer, such as Defendants, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half times the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

253. During the Class Period, Plaintiff and members of the Class did not fall under any of the exemptions provided by the IMWL. 820 ILCS 105/1 *et seq*.

254. Defendants willfully, intentionally and/or knowingly improperly classified Plaintiff and members of the Class as "exempt" employees.

255. Plaintiff and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL.

256. Defendants' failure to comply with the IMWL was reckless and/or willful.

257. Defendants failed to keep accurate records of time worked by Plaintiff and members of the Class.

258. Defendants did not make a good faith effort to comply with the IMWL in respect to compensating Plaintiff and members of the Class minimum wages and/or overtime compensation.

259. Defendants intentionally and willfully failed and/or refused to pay Plaintiff and

members of the Class minimum wages and overtime compensation by violating the FLSA and IMWL, including but not limited to improperly misclassifying Plaintiff and the Class of ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one-and-a-half times the employee's regular rate of pay, for all work performed in excess of 40 hours per week..

260. Defendants' failure to comply with Illinois law was reckless and/or willful.

261. Based on the foregoing, Plaintiff individually, and members of the Class, are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant to § 12(a) of the IMWL. 820 ILCS 105/12.

**FIFTH CLAIM FOR RELIEF**

**Declaratory Judgment and Injunctive Relief**

**Plaintiff v. Defendant JJF and Defendant LIAUTAUD**

262. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint, to the extent applicable herein and specifically does not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

263. The federal Declaratory Judgments Act, 28 U.S.C.A. § 2201, provides in pertinent part that a court: "may declare the rights and other legal relations of any interested party seeking such declaration."

264. Declaratory judgment will provide an immediate and definite determination of the parties' rights, the resolution of which would help terminate all of the disputes regarding the Parties understanding and interpretation of the Confidentiality and Non-Competition Agreement; establish the respective legal interests and rights/obligations, if any, of the Parties under the

Confidentiality and Non-Competition Agreement; determine whether it is void and unenforceable; and determine whether and how it should be modified/blue-penciled to resolve ambiguities, clarify vague and unclear provisions and modify and add language that will otherwise conform the Confidentiality and Non-Competition Agreement to be valid and enforceable. All Parties will understand their legal obligations and can determine their actions and inactions clearly, and without uncertainty or doubt.

265. Plaintiff, individually and on behalf of the following Declaratory Class, bring this Fifth Claim for Relief against all Defendants:

> "All current employees of Defendants who executed the Confidentiality and Non-Competition Agreement (Exhibit A), at any time, and former employees of Defendants that executed it and were separated from their employment on or before the date that is two years preceding the date of commencement of this action through the date of judgment in this action."

266. The Fifth Claim for Relief involves an actual and justiciable controversy, existing between the Parties, regarding their legal interest under, as well as the interpretation of, meaning of, construction of, validity of, enforceability of and need for modification of the Confidentiality and Non-Competition Agreement entered into by the Parties, as well as Defendants and the Declaratory Class.

267. The actual and justiciable controversy between the Parties, appropriate for adjudication and determination by this Court, involves:

a. Interpretation, construction and determination of the meaning and intent of certain ambiguous, vague, unclear, undefined and missing language, which is necessary to understand, establish and clarify the Parties' legal interests, as well as their respective duties, obligations, responsibilities and rights under the

Confidentiality and Non-Competition Agreement, if any;

b. Interpretation, construction and determination of the meaning of vague and ambiguous language involving the scope of certain restrictions;

c. Determination of the overall validity and enforceability of the Confidentiality and Non-Competition Agreement;

d. Determination of whether the effect of certain provisions of the Confidentiality and Non-Competition Agreement are a restraint on trade, commerce and competition, require action, or inaction, that is otherwise illegal, injurious to the public, unduly burdensome and onerous to Plaintiff, unconscionable or otherwise against public policy;

e. Determination of whether the Confidentiality and Non-Competition Agreement is so flawed that it would require this Court to rewrite the entire contract, and is therefore simply void and unenforceable and not subject to modification/blue-penciling; or in the alternative,

f. Determination that this Court can and should effectively modify/blue-pencil the Agreement to clarify ambiguities, the legal interests of the Parties, the Parties' respective duties or to conform provisions in a manner necessary to make those provisions enforceable and in compliance with Illinois law.

268. The Parties take adverse positions regarding, at least: (1) the meaning of vague, ambiguous and undefined language; (2) the scope of certain restrictions (*i.e.*, activities, geographic); (3) the validity and enforceability of certain provisions, as well as the entire Confidentiality and Non-Competition Agreement; (4) the parties' respective duties and obligations under certain provisions containing unclear or ambiguous language; (5) whether

performance of certain provisions are impossible (*i.e.*, determining businesses with 10% revenue provision, complying with an unlimited scope of undefined restricted "indirect or direct interest" and "services" restriction or disclosing competitor job offers without a definition of competitor) or legally impermissible to reasonably perform; (6) whether the agreement violates public policy, is unconscionable, is against public policy, injurious to trade, commerce and competition, lacks adequate consideration or is otherwise void; and (7) whether the Confidentiality and Non-Competition Agreement can and should be modified/blue-penciled, as provided for in the Agreement, as necessary to clarify ambiguities, establish the legal interests of the parties, duties, obligations and responsibilities or otherwise conform provisions to comply with and be valid and enforceable.

269. Plaintiff executed a copy of the Confidentiality and Non-Competition Agreement as a condition of his employment by Defendants.

270. The Confidentiality and Non-Competition Agreement is operational with regard to Plaintiff, insomuch as the two year period following separation from Defendants has not yet expired.

271. The Confidentiality and Non-Competition Agreement is operational for all Declaratory Class Members because the class definition is limited to include current employees and former employees who have executed the agreement during the two years preceding the filing of this action and continuing through the date of judgment.

272. Plaintiff, as a party to the Confidentiality and Non-Competition Agreement, is uncertain of his legal interests, rights, responsibilities, duties and obligations thereunder; has found it impossible meet ongoing compliance duties and determine compliance with certain restrictions; is currently taking affirmative action, and engaging in inaction, based on his lack of

understanding and apprehension of being in unwitting breach of unclear, ambiguous or impossible to perform provisions; and has a reasonable apprehension of imminent breach or enforcement action by Defendants, as set forth, in part, more fully herein.

273. Plaintiff is currently acting, will continue to act, is under a purported duty to continue certain action and inaction, and is likely to breach the Confidentiality and Non-Competition Agreement, if he has not already, absent a determination by this Court that clarifies the ambiguities, uncertainties and affirmatively establishes what, if any, legal interests the Parties each have under the Agreement.

274. Plaintiff is currently suffering economic loss; is being unduly restricted in his active pursuit of alternative employment; is being caused to act, and refrain from acting, due to uncertain and unclear obligations and duties that may give rise to breach and an enforcement action; is making disclosures that may violate the confidentiality provision; and is otherwise in imminent risk of breach, or has already breached the Agreement, and is reasonably apprehensive of being subjected to enforcement action by Defendants, required to pay Defendants' damages and costs of enforcement and caused to incur costs of his own defense.

275. Plaintiff and the Declaratory Class Members are entitled to seek the Declaratory Judgment sought in the Fifth Claim for Relief, in order to understand and comply with their legal obligations and duties, if any, and to avoid probable breach and further legal action as a result of such breach.

276. Plaintiff and the Declaratory Class Members are not required to breach the Confidentiality and Non-Competition Agreement or to be subject to legal action by Defendants, in order to obtain the Declaratory Judgment determining their legal interests and obligations, if any, under the Confidentiality and Non-Competition Agreement, necessary to understand their

legal obligations and to guide their current, and continuing, actions and inactions so as to avoid possible breach of a potentially valid and operational contract and further costs, damages and losses of Defendants' enforcement action, as set forth in the agreement.

277. The Confidentiality and Non-Competition Agreement is unreasonable, overly broad, oppressive, injurious to Plaintiff and the Rule 23(b)(2) Class, in restraint of trade, against public policy and does not serve any legitimate protectable interest of any of the Defendants.

278. At the time this lawsuit commenced, Defendants had not discontinued enforcement and use of the Confidentiality and Non-Competition Agreement, and will not absent a declaratory judgment and injunctive relief. There is no adequate remedy at law for Defendants' conduct alleged in this Claim. Absent injunctive relief, Plaintiff and the Class are suffering, and will continue to suffer irreparable harm.

279. Plaintiff, on behalf of the Declaratory Class demonstrates that he is entitled to a declaratory judgment that the Confidentiality and Non-Competition Agreement is void as a matter of law and is unenforceable, and an injunction prohibiting Defendants from further utilizing or enforcing the Confidentiality and Non-Competition Agreement.

280. In the alternative, Plaintiff has established that he, and members of the Declaratory Class, are entitled to a Declaratory Judgment interpreting, constructing and modifying (blue-penciling) the Confidentiality and Non-Competition Agreement, as is provided for in paragraph 8 of the Agreement, as necessary to resolve obvious ambiguities, unclear and vague provisions, determine the Parties' legal rights, obligations and duties and to otherwise make and conform illegal or unenforceable provisions in a manner sufficient to be legal and enforceable under the law. Specifically, at least the following provisions require modification/ blue-penciling:

1. Confidentiality Provision (paragraph 2);

2. Non-Competition Covenant (paragraph 3);

3. Disclosure Duty (paragraph 4);

4. Costs and Attorneys' Fees (paragraph 6); and

5. Applicability to certain employees.

**SIXTH CLAIM FOR RELIEF**

**Declaratory Judgment and Injunctive Relief**

**Plaintiff v. Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON**

281. Plaintiff re-alleges and incorporates each of the foregoing paragraphs of this Complaint, to the extent applicable herein and specifically does not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein

282. The federal Declaratory Judgments Act, 28 U.S.C.A. § 2201, provides in pertinent part that a court: "may declare the rights and other legal relations of any interested party seeking such declaration."

283. Declaratory judgment will provide an immediate and definite determination of the parties' rights, the resolution of which would help terminate all of the disputes regarding the Parties understanding and interpretation of the Confidentiality and Non-Competition Agreement; establish the respective legal interests and rights/obligations, if any, of the Parties under the Confidentiality and Non-Competition Agreement; determine whether it is void and unenforceable; and determine whether and how it should be modified/blue-penciled to resolve ambiguities, clarify vague and unclear provisions and modify and add language that will otherwise conform the Confidentiality and Non-Competition Agreement to be valid and

enforceable. All Parties will understand their legal obligations and can determine their actions and inactions clearly, and without uncertainty or doubt.

284. Plaintiff, individually and on behalf of the following Declaratory Class, bring this Sixth Claim for Relief against Defendants:

> "All current employees of Defendants who executed the Confidentiality and Non-Competition Agreement (Exhibit A), at any time, and former employees of Defendants that executed it and were separated from their employment on or before the date that is two years preceding the date of commencement of this action through the date of judgment in this action."

285. The Sixth Claim for Relief involves an actual and justiciable controversy, existing between the Parties, regarding their legal interest under, as well as the interpretation of, meaning of, construction of, validity of, enforceability of and need for modification of the Confidentiality and Non-Competition Agreement entered into by the Parties, as well as Defendants and the Declaratory Class.

286. The actual and justiciable controversy between the Parties, appropriate for adjudication and determination by this Court, involves:

a. Interpretation, construction and determination of the meaning and intent of certain ambiguous, vague, unclear, undefined and missing language, which is necessary to understand, establish and clarify the Parties' legal interests, as well as their respective duties, obligations, responsibilities and rights under the Confidentiality and Non-Competition Agreement, if any;

b. Interpretation, construction and determination of the meaning of vague and ambiguous language involving the scope of certain restrictions;

c. Determination of the overall validity and enforceability of the

Confidentiality and Non-Competition Agreement;

d. Determination of whether the effect of certain provisions of the Confidentiality and Non-Competition Agreement are a restraint on trade, commerce and competition, require action, or inaction, that is otherwise illegal, injurious to the public, unduly burdensome and onerous to Plaintiff, unconscionable or otherwise against public policy;

e. Determination of whether the Confidentiality and Non-Competition Agreement is so flawed that it would require this Court to rewrite the entire contract, and is therefore simply void and unenforceable and not subject to modification/blue-penciling; or in the alternative,

f. Determination that this Court can and should effectively modify/blue-pencil the Agreement to clarify ambiguities, the legal interests of the Parties, the Parties' respective duties or to conform provisions in a manner necessary to make those provisions enforceable and in compliance with Illinois law.

287. The Parties take adverse positions regarding, at least: (1) the meaning of vague, ambiguous and undefined language; (2) the scope of certain restrictions (*i.e.*, activities, geographic); (3) the validity and enforceability of certain provisions, as well as the entire Confidentiality and Non-Competition Agreement; (4) the parties' respective duties and obligations under certain provisions containing unclear or ambiguous language; (5) whether performance of certain provisions are impossible (*i.e.*, determining businesses with 10% revenue provision, complying with an unlimited scope of undefined restricted "indirect or direct interest" and "services" restriction or disclosing competitor job offers without a definition of competitor)

or legally impermissible to reasonably perform; (6) whether the agreement violates public policy, is unconscionable, is against public policy, injurious to trade, commerce and competition, lacks adequate consideration or is otherwise void; and (7) whether the Confidentiality and Non-Competition Agreement can and should be modified/blue-penciled, as provided for in the Agreement, as necessary to clarify ambiguities, establish the legal interests of the parties, duties, obligations and responsibilities or otherwise conform provisions to comply with and be valid and enforceable.

288. Plaintiff executed a copy of the Confidentiality and Non-Competition Agreement as a condition of his employment by Defendants.

289. The Confidentiality and Non-Competition Agreement is operational with regard to Plaintiff, insomuch as the two year period following separation from Defendants has not yet expired.

290. The Confidentiality and Non-Competition Agreement is operational for all Declaratory Class Members because the class definition is limited to include current employees and former employees who have executed the agreement during the two years preceding the filing of this action and continuing through the date of judgment.

291. Plaintiff, as a party to the Confidentiality and Non-Competition Agreement, is uncertain of his legal interests, rights, responsibilities, duties and obligations thereunder; has found it impossible meet ongoing compliance duties and determine compliance with certain restrictions; is currently taking affirmative action, and engaging in inaction, based on his lack of understanding and apprehension of being in unwitting breach of unclear, ambiguous or impossible to perform provisions; and has a reasonable apprehension of imminent breach or enforcement action by Defendants, as set forth, in part, more fully herein.

292. Plaintiff is currently acting, will continue to act, is under a purported duty to continue certain action and inaction, and is likely to breach the Confidentiality and Non-Competition Agreement, if he has not already, absent a determination by this Court that clarifies the ambiguities, uncertainties and affirmatively establishes what, if any, legal interests the Parties each have under the Agreement.

293. Plaintiff is currently suffering economic loss; is being unduly restricted in his active pursuit of alternative employment; is being caused to act, and refrain from acting, due to uncertain and unclear obligations and duties that may give rise to breach and an enforcement action; is making disclosures that may violate the confidentiality provision; and is otherwise in imminent risk of breach, or has already breached the Agreement, and is reasonably apprehensive of being subjected to enforcement action by Defendants, required to pay Defendants' damages and costs of enforcement and caused to incur costs of his own defense.

294. Plaintiff and the Declaratory Class Members are entitled to seek the Declaratory Judgment sought in the Sixth Claim for Relief, in order to understand and comply with their legal obligations and duties, if any, and to avoid probable breach and further legal action as a result of such breach.

295. Plaintiff and the Declaratory Class Members are not required to breach the Confidentiality and Non-Competition Agreement or to be subject to legal action by Defendants, in order to obtain the Declaratory Judgment determining their legal interests and obligations, if any, under the Confidentiality and Non-Competition Agreement, necessary to understand their legal obligations and to guide their current, and continuing, actions and inactions so as to avoid possible breach of a potentially valid and operational contract and further costs, damages and losses of Defendants' enforcement action, as set forth in the agreement.

296. The Confidentiality and Non-Competition Agreement is unreasonable, overly broad, oppressive, injurious to Plaintiff and the Declaratory Class, in restraint of trade, against public policy and does not serve any legitimate protectable interest of any of the Defendants.

297. At the time this lawsuit commenced, Defendants had not discontinued enforcement and use of the Confidentiality and Non-Competition Agreement, and will not absent a declaratory judgment and injunctive relief. There is no adequate remedy at law for Defendants' conduct alleged in this Claim. Absent injunctive relief, Plaintiff and the Class are suffering, and will continue to suffer irreparable harm.

298. Plaintiff, on behalf of the Declaratory Class demonstrates that he is entitled to a declaratory judgment that the Confidentiality and Non-Competition Agreement is void as a matter of law and is unenforceable, and an injunction prohibiting Defendants from further utilizing or enforcing the Confidentiality and Non-Competition Agreement.

299. In the alternative, Plaintiff has established that he, and members of the Declaratory Class, are entitled to a Declaratory Judgment interpreting, constructing and modifying (blue-penciling) the Confidentiality and Non-Competition Agreement, as is provided for in paragraph 8 of the Agreement, as necessary to resolve obvious ambiguities, unclear and vague provisions, determine the Parties' legal rights, obligations and duties and to otherwise make and conform illegal or unenforceable provisions in a manner sufficient to be legal and enforceable under the law. Specifically, at least the following provisions require modification/ blue-penciling:

1. Confidentiality Provision (paragraph 2);
2. Non-Competition Covenant (paragraph 3);
3. Disclosure Duty (paragraph 4);

4. Costs and Attorneys' Fees (paragraph 6); and

5. Applicability to certain employees.

**DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons respectfully requests the following relief:

a. That this Court find that all the requirements for certification of a collective action under 29 U.S.C. § 216(b) have been satisfied and certify the collective action FLSA claims set forth in Plaintiff's First and Third Claim;

b. That this Court find that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied and certify Plaintiff's Second and Fourth Claim as class action under Rule 23(b)(1) and/or (b)(3) of the Federal Rules of Civil Procedure, including a defendant class under Plaintiffs' Second Claim;

c. That this Court find that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied and certify Plaintiff's Fifth and Sixth Claim as a class under 23(b)(2) of the Federal Rules of Civil Procedure, including a defendant class under Plaintiffs' Sixth Claim;

d. That Plaintiff be appointed as representative of the Classes and Collectives, as set forth herein;

e. That Plaintiff's counsel be appointed as Class Counsel;

f. That Plaintiff and members of the Classes and Collectives, be awarded damages including unpaid wages and overtime compensation under the

FLSA and IMWL;

g. That Plaintiff and members of the Classes and Collectives, be awarded an additional and equal amount as liquidated and/or punitive damages under the FLSA and IMWL;

h. That this Court find that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied and certify the proposed Defendant classes under 23(b)(1) and/or 23(b)(3);

i. Entry of an Order directing Defendants to supply the names, all known addresses and phone numbers of the similarly situated ASMs to Plaintiff's counsel so that Plaintiff may be allowed to send out notice of the Class Action and FLSA Collective Action, or that the Court issue such notice, to all persons who are presently, or have at any time during the past 10 years immediately preceding the filing of this suit, been employed by Defendants as ASMs. Such notice shall inform them of that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied wages;

j. Permanent Injunctive Relief directing Defendants to discontinue its practice of denying ASMs overtime pay;

k. Entry of Declaratory Judgment that the Confidentiality and Non-Competition Agreement if void as a matter of law and unenforceable;

l. Permanent injunctive relief prohibiting Defendants from enforcing the Confidentiality and Non-Competition Agreement or continuing to use it, in written or oral form;

m. In the alternative to the preceding subsections "j" and "k," a Declaratory Judgment interpreting, constructing and determining the meaning, rights, duties and obligations under the Confidentiality and Non-Competition Agreement and modifying/blue-penciling it to resolve ambiguities, cure deficiencies, provide necessary clarity and otherwise ensure that it conforms with and is enforceable under the law;

n. Award of pre-judgment and post-judgment interest, as provided by law;

o. Award reasonable attorneys' fees and costs under the FLSA and IMWL; and

p. Award any and all other appropriate relief as in law or equity may pertain.

**JURY DEMAND**

Plaintiff demands a trial by jury by all issues so triable.

Dated: February 25, 2015

Respectfully submitted,

MYRON M. CHERRY & ASSOCIATES LLC

/s/Myron M. Cherry

Myron M. Cherry
Jacie C. Zolna
Alexandra L. Nickow
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100
***Attorneys for Plaintiff***

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **ALEXANDER WHITON, individually and on behalf of all persons similarly situated, as Class/Collective representative,** | ) | **Case No.:** ___________ |
| **Plaintiff,** | ) | |
| v. | ) | **Hon.** ___________ |
| **JAMES JOHN LIAUTAUD, JIMMY JOHN'S, LLC, JIMMY JOHN'S ENTERPRISES, LLC, JJ SEVERSON AFFILIATES FIVE, INC. JJ SEVERSON AFFILIATES, INC., JIMMY JOHN'S FRANCHISE, LLC, TODD SEVERSON, and BROOKE SEVERSON,** | ) | |
| **Defendants.** | ) | |

**DECLARATION OF ALEXANDER WHITON**

1. My name is Alexander Whiton. I live in Lake County, Illinois with an address of 3341 Roger Avenue, Park City, Illinois 60085.

2. I previously worked for Jimmy John's® at several locations, all owned by the same franchisee, Todd Severson. Particularly, I worked:

   a. In or about June 2013, as an Assistant Manager at the Jimmy John's® location in Waukegan, Illinois;

   b. In or about July 2013, as an Assistant Manager at the Jimmy John's® location in Vernon Hills, Illinois; and

   c. In or about August 2013, as an Assistant Manager at the Jimmy John' ®

location in Gurnee, Illinois. Ultimately, I was transferred back to the Jimmy John's® location in Waukegan, Illinois in or about September 2013.

3. As an Assistant Manager, I was paid a salary of approximately $500 per week.

4. As an Assistant Manager, I worked, on average, over 70 hours per week throughout my entire course of employment.

5. My job duties as an Assistant Manager included:

a. Cleaning the store;

b. Customer service;

c. Counting the cash drawers;

d. Executing paperwork;

e. Sandwich making;

f. Slicing bread and meats; and

g. Preparing the vegetables.

6. My job duties as an Assistant Manager were nearly identical to the job duties of non-managerial, hourly positions. The only exception is that non-managerial, hourly positions did not count the cash drawers.

7. While employed at Jimmy John's®, I witnessed the control that Jimmy John's® corporate held over the franchise. Specifically, I encountered monthly visits from corporate "Business Coaches" who performed audits at the franchise locations to ensure that the franchise was conforming to Jimmy John's® corporate policies and procedures. The audits consisted of a corporate evaluation of the store's cleanliness, bookkeeping, customer service, and overall appearance. As an example of the corporate control exhibited during an audit, a Business Coach

would often require the franchise to add or remove certain signage at the store per corporate instruction. Non-compliance with the Business Coach or a poor audit evaluation could result in managers forfeiting their bonus.

8. I declare under penalty of perjury that the foregoing is true and correct.

**VERIFICATION**

I, ALEXANDER WHITON, being first duly sworn under oath hereby state that I have read the foregoing Declaration, and that the statements contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted,

ALEXANDER WHITON

OFFICIAL SEAL
CHANDRA WILLIAMS
Notary Public - State of Illinois
My Commission Expires Aug 7, 2018

Subscribed and Sworn to before
me this 20 day of February, 2015.